**Carlton Stewart SHORTER,
Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C0–92–1185.

Supreme Court of Minnesota.

Feb. 11, 1994.

John M. Stuart, State Public Defender, Cathryn Middlebrook, Asst. State Public Defender, University of Minnesota, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., J. Michael Richardson, Lisa

Berg, Asst. County Attys., Minneapolis, for respondent.

GARDEBRING, Justice.

The appellant, Carlton Stewart Shorter, asks this court to reverse the denial of his post-conviction motion to withdraw a guilty plea. Shorter was charged with two counts of first degree criminal sexual conduct and one count of kidnapping. He pleaded guilty to one count of criminal sexual conduct pursuant to a plea agreement providing for dismissal of the remaining two counts. He moved to withdraw his plea prior to sentencing. The district court denied his motion and sentenced him to 105 months according to the plea agreement.

After Shorter's sentencing, the Minneapolis police department reopened its investigation into the case and located two witnesses who corroborated certain aspects of Shorter's version of the events. Based upon the evidence uncovered, Shorter made a post-conviction motion to withdraw his guilty plea. The district court again denied his motion and the court of appeals affirmed. Acting in our supervisory role over the courts and in the interests of justice, we reverse the court of appeals and order the district court to allow appellant to withdraw his guilty plea and proceed to trial.

At the time of the plea, the evidence against Shorter consisted of the victim's statement and the statements of two of her companions on the night of the incident. The victim reported that she was at a Minneapolis nightclub with friends, when she left them to go to the bathroom. She stated that when she left the bathroom, a man approached her, told her that he had a knife and directed her to go outside with him. She said that he walked her down the street and took her to an alley where he threatened her with a knife and raped her. He then walked her back into the building where she saw one of her friends and her attacker fled.

Two of the victim's companions also gave statements to the police. They stated that when the victim did not return from the bathroom, they began to look for her. About 15 minutes after they began looking, one companion saw the victim walking back toward the club with a man who had his arm around her, and his fist clenched. The victim's friend testified that when she took the man's coat off the victim and threw it on the floor, he picked it up, said he would kill the victim, and left. Shorter was identified two nights later by one of the victim's companions.

Shorter has consistently maintained that he had consensual sex with the victim and that he did not have a knife. When police first questioned him, Shorter admitted to having sexual intercourse with the victim, but said that it was consenting and that no force was used. He said he met a girl on the street and asked her "if she wanted to party," that they walked around, went into an alley, and had sex. He denied grabbing her, pulling her arm, or threatening her with a knife. He said that when he walked her back to the nightclub they met a woman who asked him to join them, but he declined and left. Shorter stated that several witnesses had been with him prior to his contact with the woman.

Shorter gave the police and his defense counsel the first names of two men whom he said had been with him on the night in question and had been staying with him at the Harbor Lights residence. During discovery, defense counsel received lists of the residents of Harbor Lights from the county attorney, but, based on the lists, was unable to locate the men Shorter described. Defense counsel alleges that some of the pages of the records were missing, and that the missing pages contained the names of the corroborating witnesses. The prosecutor claims that all documents in its file were available to the defense at all times pursuant to its "open file policy."

Shorter pleaded guilty to the one count of first degree criminal sexual conduct. At the hearing, Shorter was questioned exclusively by defense counsel and generally gave only yes or no answers. The judge did not question him. Although Shorter acknowledged that he understood he was waiving all of his constitutional rights and his defenses, that he

had been advised of the government's evidence and the potential penalties, and that he was pleading guilty of his own free will, he was never asked to describe the incident giving rise to the charge. He admitted having sexual intercourse with the victim, but his attorney asked him questions which required only that he acknowledge the state's evidence, rather than admit the elements of the crime. Shorter did not admit that he had a knife or that the victim did not consent to intercourse. He merely agreed with his attorney's statements that the victim had so claimed and would so testify.

Nine days after the plea, Shorter met with a pre-sentence investigation officer and stated that he was innocent. He retained new counsel and filed a motion to withdraw his guilty plea. Shorter's testimony was taken and argument heard on the motion at his sentencing hearing. He testified that he was innocent, that he pleaded guilty out of fear, both because of the potential for a lengthy sentence upon conviction and because he felt his attorney was not pursuing his case aggressively as the attorney had not located the corroborating witnesses or character witnesses whose names Shorter had provided. Shorter testified that his public defender told him "he didn't have a chance" and referred to the fact that Shorter was a black man and the victim a white woman. Shorter denied forcing the victim to have intercourse. The district court denied his motion.

After his sentencing, Shorter continued to call the Minneapolis police department professing his innocence and insisting that the police investigator had failed to contact his corroborating witnesses. He requested that the Minneapolis police contact a Chicago police officer. The Minneapolis police contacted the Chicago officer who told them that he had known Shorter for 10 years and had never known him to be violent or to carry a weapon. He indicated further that the circumstances surrounding this incident were not typical of what he knew of Shorter's behavior. The Minneapolis police department then noted irregularities in its original

investigation. Specifically, police investigators had never pursued the statement by one of the victim's companions that her "other friend" had seen the victim go outside. In spite of indications in the police records now before us that a third companion of the victim told investigators she had seen the victim leaving the building, her statement was never taken. Nor did police locate or contact the corroborating witnesses Shorter identified, although the police knew their first names and that they were staying at the Harbor Lights residence with him. Police reports also indicate that no knife was ever found.

The Minneapolis police initiated a new investigation. It quickly turned up the names of the corroborating witnesses who had been with Shorter during the evening in question. Both new witnesses gave statements to the police investigator that they had seen Shorter meet a woman outside on the street that night and walk away with her. Both denied that Shorter forced the woman to walk with him, and neither had ever seen Shorter with a knife.

After this evidence was uncovered, Shorter moved for post-conviction relief from the judgment in the district court. He argued that his plea was induced by fear based upon his public defender's advice and inadequate assistance, that the plea lacked an adequate factual basis and that the newly discovered evidence rendered the guilty plea a manifest injustice. At the hearing on the motion, Shorter's attorney argued that the plea was not knowing, voluntary or intelligent, given the lack of investigation into the case. Shorter's attorney was prepared to present the evidence from the new police investigation. A police investigator was available to testify about standard police procedures, the deficiencies in the original investigation, the reopening of the case and the new evidence. An investigator for the defense was subpoenaed to testify regarding the investigation of the case.[1] Shorter's attorney also made an offer of proof as to the testimony of the two new witnesses. The trial court refused to

1. He would have testified that he went to the Harbor Lights and talked to the resident counselor who was unable to give him the names of the corroborating witnesses, and that only after the conviction did he learn from the police officer who reopened the investigation that the public defender did not have the complete list of residents of the shelter.

hear the testimony and allowed only argument from counsel on the motion.

The trial court denied Shorter's post-conviction motion, concluding that his guilty plea was knowingly, intelligently and voluntarily entered, that he had at all times been represented by competent counsel and that the state's records were available to the defense pursuant to the state's "open file" policy. The court also found that Shorter failed to meet the standards for a new trial on the basis of newly discovered evidence because the evidence was known and could have been acquired at the time of the trial, was immaterial because it was doubtful and impeaching and was unlikely to produce a result more favorable to Shorter.

On appeal, the court of appeals agreed with the trial court, placing the burden on Shorter to show that the prosecution had withheld the crucial discovery materials. The court of appeals also rejected Shorter's argument that his plea lacked an adequate factual basis.

Shorter makes several arguments to support his claim that we should reverse the court of appeals and allow him to withdraw his plea. First, he asserts that his plea did not meet the prerequisites to a valid plea set out in *State v. Trott*, 338 N.W.2d 248 (Minn. 1983). He argues that the plea was not knowingly, voluntarily and intelligently made because he was denied an adequate police investigation which, when reopened, discovered exculpatory evidence. He also argues that the plea lacked the necessary factual basis which we require to ensure the accuracy of the guilty pleas under *Beaman v. State*, 301 Minn. 180, 183, 221 N.W.2d 698, 700 (1974). Shorter argues that his plea lacked an adequate factual basis because he merely agreed that the state would offer evidence against him and did not admit to the elements of the crime to which he pleaded guilty. Shorter makes two further arguments based on his lack of access to the corroborating witnesses at the time of the

plea. He asks us to exercise our supervisory power over the courts and order a trial because the prosecutor in his case withheld the lists from the Salvation Army Harbor Lights which contained the names of his witnesses. He also argues that the testimony of the two corroborating witnesses constitutes newly acquired evidence which requires us to allow him to withdraw his plea and proceed to trial.[2]

■■■ Once a guilty plea has been entered, there is no absolute right to withdraw it. *Kim v. State*, 434 N.W.2d 263 (Minn. 1989). Decisions on whether or not to grant a motion to withdraw a guilty plea are generally left to the trial court. *Id.* at 266. Our rules of criminal procedure do require, however, that we allow a defendant to withdraw a plea of guilty "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn.R.Crim.P. 15.05, subd. 1. Because Shorter has demonstrated that withdrawal of his plea is necessary to correct a manifest injustice, we reverse the court of appeals and order that Shorter be allowed to withdraw his guilty plea. In allowing Shorter to withdraw his guilty plea, we do not intend any comment upon his ultimate guilt or innocence. We simply hold that the highly unusual facts of this case render his plea suspect and justify allowing appellant to exercise his rights to a trial by jury and to confront the witnesses against him.

We considered many factors in reaching this conclusion. First, we found persuasive the unusual fact that the Minneapolis police department reopened its investigation and was prepared to testify before the trial court that the original police investigation into Shorter's case was incomplete. We are also concerned that the defendant did not have access to the complete list of residents of the Harbor Lights residence. Based on the record before us, we cannot determine whether any discovery violation occurred. It is clear, however, that the effect of the substandard

---

**2.** Shorter also argues that the trial judge's actions in suggesting that he take a polygraph test while Shorter's case was on appeal and then affirming the denial of Shorter's motion to withdraw his guilty plea after his answers to two

polygraph tests were determined to be "substantially truthful" was an abuse of discretion. We did not consider this issue in reaching our conclusion in this case.

police investigation on appellant was compounded by defense counsel's inability to locate his corroborating witnesses, whether or not that inability was due to a discovery violation by the prosecutor.

We also have misgivings regarding the trial court's acceptance of Shorter's plea. We find it troubling that the court did not conduct any questioning of the defendant, particularly after the defense attorney merely asked leading questions requiring only that the defendant acknowledge the state's evidence as to key elements of the crime. We have previously stated that the trial court bears the primary responsibility to advise and interrogate the defendant in sufficient detail to establish an adequate factual basis for the plea. *State v. Hoaglund,* 307 Minn. 322, 240 N.W.2d 4 (1976). In reversing the judgment of conviction upon a guilty plea in *Hoaglund,* we stated that we hoped that trial judges would ask questions with respect to the factual basis for the crime so as to avoid the inclination of counsel to elicit those facts through leading questions. *Id.* 240 N.W.2d at 6. The court in this case asked no questions at all and based its acceptance of the plea on just such leading questions.

Further, we are concerned about the nature of the hearing on appellant's post-conviction motion to withdraw his plea. We have held that where a defendant attempting to withdraw a plea petitions a district court with factual allegations indicating the need for a hearing, he should be given one. *Brown v. State,* 449 N.W.2d 180, 183 (Minn. 1989). Had the trial court conducted an evidentiary hearing here, the record before us would have allowed more substantial analysis of the new evidence appellant was prepared to present.

Finally, in considering appellant's claims, we are also mindful of the Supreme Court's admonition that "justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). We note that appellant is not seeking a *new* trial; rather, he asks this court to remove the barrier of his plea and allow him *a* trial. Given the number of procedural irregularities present in this matter, we are prepared to exercise our supervisory powers

to give him that chance. We therefore order that the trial court grant appellant's motion to withdraw his guilty plea and proceed to trial.

Reversed.