**STATE of Minnesota, Respondent,**

v.

**Justin Paul FARNSWORTH, Appellant.**

No. A06–258.

Supreme Court of Minnesota.

Sept. 13, 2007.

---

Mark D. Nyvold, St. Paul, MN, for Appellant.

Lori Swanson, Attorney General, St. Paul, MN, James C. Backstrom, Dakota County Attorney, Scott A. Hersey, Asst. Dakota County Attorney, Hastings, MN, for Respondent.

## OPINION

MEYER, Justice.

Appellant Justin Paul Farnsworth was arrested and charged with three counts of criminal sexual conduct. Farnsworth pleaded guilty, but prior to sentencing moved to withdraw his plea, claiming that his plea was not voluntary because he was not aware that he could challenge the admissibility of the incriminating statements that he had made during a police interview. The district court determined that a fair and just reason existed to permit a plea withdrawal because it concluded that an incriminating portion of Farnsworth's confession was involuntary and therefore suppressible. The court of appeals reversed and remanded for sentencing. We affirm the court of appeals but for a different reason, fully explained in this opinion.

In November 2004, Officer Michael Schmitz of the Hastings Police Department began investigating a complaint that Farnsworth had been sexually abusing B.P., a 9–year–old girl in his care.[1] Officer Schmitz interviewed B.P., and during the interview B.P. described sexual acts that had been perpetrated on her and

1. B.P. was the child of Farnsworth's former partner, but not Farnsworth's biological child. Farnsworth had residential custody of B.P. because her mother had previously been unable to adequately care for her. Farnsworth also had residential custody of two of his other minor children.

named Farnsworth as the perpetrator. The day of the interview, Schmitz placed a 72–hour hold on Farnsworth's children, which prevented them from returning to Farnsworth's home, and attempted to contact Farnsworth.[2] Since Schmitz was unable to reach Farnsworth, he left Farnsworth a message asking Farnsworth to contact him, informing Farnsworth that his children would not be returning to his home that weekend, and requesting that Farnsworth call. When Schmitz spoke to Farnsworth on Monday, he requested that Farnsworth come to the police station to speak with him so that Farnsworth could regain custody of his children.

On Monday, November 15, 2004, Farnsworth met with Schmitz in his office at the Hastings Police Department. Schmitz wore civilian clothes, but also wore his badge on his belt and his gun on his side. Farnsworth was told twice that he was not under arrest, and he was not handcuffed or otherwise restrained during the interview. Although the door to his office was closed, Schmitz told Farnsworth that he could leave at any time.

When Farnsworth came to the police station, he thought that Schmitz had contacted him regarding an incident involving one of his other children, in which the police had been contacted. But after discussing Farnsworth's background, including his status as a previous sex offender, Schmitz explained that he had contacted Farnsworth to discuss allegations that Farnsworth had inappropriately touched B.P.

Before Schmitz began questioning Farnsworth about the allegations, he emphasized the importance of telling the truth, telling Farnsworth that the police and judges do not appreciate it when peo-

ple lie. Farnsworth initially denied that he had inappropriately touched B.P. and suggested that the allegations had arisen because B.P.'s mother wanted custody of B.P. But after Schmitz indicated that B.P. had been forthcoming with the details of the abuse and reminded Farnsworth of the importance of being truthful, Farnsworth admitted to watching pornographic movies and masturbating while touching B.P.'s buttocks. Farnsworth initially denied having any other sexual contact with B.P.

Midway through the interview, after Farnsworth expressed his concern that Schmitz was going to put him in jail, Schmitz told Farnsworth that he was "not trying to put [Farnsworth] away. I'm trying to get you the best help I can so you can have your kids still." When Farnsworth indicated that he would like help, Schmitz told him, "you're gonna get it. But you're not gonna get it by sitting here lying." Farnsworth then informed Schmitz that he was not trying to lie and after a pause said, "[s]he says I did it, I did it." Farnsworth again denied performing oral sex on B.P. or making her touch his penis, but after further questioning acknowledged that B.P. had touched his penis, B.P. had performed oral sex on him, he had put his mouth and his penis on B.P.'s vagina while she was wearing underwear, and he had put his finger in B.P.'s vagina while she was wearing underwear.

At this point Schmitz left the room and returned with a glass of water for Farnsworth. When Schmitz returned, he informed Farnsworth that he would like to take a shorter two- to four-minute long "formal" statement that would only discuss what happened between Farnsworth and B.P. Farnsworth informed Schmitz that he

2. During the time period in which Schmitz placed a 72–hour hold on Farnsworth's children, Farnsworth testified that the children were scheduled to be with their mother, not with Farnsworth.

"got [his] confession." Farnsworth asked Schmitz if he would lose custody of his children and what would happen next. Schmitz repeated that they needed to take a formal statement. Farnsworth refused to answer Schmitz's questions, asked Schmitz to turn off the audio recorder, and seemed to suggest that if he gave Schmitz a formal statement, he would lose custody of his kids. Schmitz then repeated his promise of help, which Farnsworth rejected, suggesting that the help that Schmitz was offering was actually jail. Schmitz once again attempted to take a formal statement, but Farnsworth refused, informing Schmitz that he knew he had a right to remain silent and that everything he said could be used against him in court.

When the interview resumed after a break, Farnsworth waived his right to an attorney and Schmitz tried to take a formal statement. But when Schmitz began questioning Farnsworth about B.P., Farnsworth denied any inappropriate contact with B.P. and told Schmitz that everything in his earlier confession was false because he was "being coerced." Schmitz then ended the interview, and Farnsworth briefly conferred with a social worker. Schmitz arrested Farnsworth after Farnsworth finished speaking with the social worker. At no point in the interview was Farnsworth read his *Miranda* rights.

Following his arrest, Farnsworth was charged with three counts of criminal sexual conduct.[3] After reviewing the videotape and other evidence, Farnsworth's attorney concluded that the confession on the videotape would likely not be suppressed because there was no *Miranda* violation. Farnsworth's attorney advised Farnsworth that if the case went to a jury trial and Farnsworth was convicted, the odds of Farnsworth obtaining a stay of execution and sex offender treatment would be extremely slim. He informed Farnsworth that his best chance of obtaining a stay of execution was to plead guilty and have a sentencing hearing before a judge. Although his attorney discussed case strategy with him, Farnsworth did not see a transcript of his confession or discuss with counsel the possible grounds for suppressing the confession until after he entered his guilty plea.

On April 18, 2005, Farnsworth pleaded guilty to Count I (criminal sexual conduct in the first degree for engaging in sexual penetration of another person under 13 years of age when he was more than 36 months older than the victim and when such offense occurred within 15 years of a previous sex offense conviction) in exchange for the dismissal of Counts II (sexual contact) and III (sexual penetration of a person with significant relationship). At the time of his plea, Farnsworth acknowl-

---

**3.** Count I under Minn.Stat. §§ 609.342, subd. 1(a) (2006), subd. 2(a) (2004), subd. (b) (2006), 609.109, subd. 2 (2004) (repealed 2006), and 609.101 (2004) for engaging in sexual penetration of another person when the victim was under 13 years of age and the defendant was more than 36 months older than the victim and the offense occurred within 15 years of a previous sex offense conviction; Count II under Minn.Stat. §§ 609.342, subd. 1(a), subd. 2(a), (b), 609.341, subd. 11(c) (2006), 609.109, subd. 2, and 609.101 for engaging in sexual contact with a person under 13 years of age when the defendant was more than 36 months older than the victim and the offense occurred within 15 years of a previous sex offense conviction; and Count III under Minn.Stat. §§ 609.342, subd. 1(h)(iii) (2006), 609.109, subd. 2, and 609.101 for engaging in sexual penetration with another person that the defendant had a significant relationship with when the victim was under 16 years of age at the time of the sexual penetration, the sexual abuse involved multiple acts committed over an extended period of time, and the offense occurred within 15 years of a previous sex offense conviction.

edged that he had a right to a jury trial, to call witnesses, and to challenge the constitutional admissibility of evidence the state may wish to present.

Farnsworth waived his rights to a sentencing jury under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and agreed to have a sentencing hearing before the district court instead of a jury. On August 29, 2005, Farnsworth withdrew his waiver of *Blakely* issues and requested a sentencing jury. Almost two weeks later, Farnsworth moved to withdraw his guilty plea claiming that he lacked the capacity to plead, lacked an understanding of the direct consequences of the plea, and that his plea was not voluntary, intelligent, or accurate.

On November 8, 2005, Farnsworth, through new counsel, filed an amended motion to withdraw his plea. In his amended motion, Farnsworth alleged that he had not received Rule 9 discovery materials and had not discussed the materials with his attorney before his plea; he was not informed that grounds may exist to suppress his November 15, 2004, statement to Schmitz; he was not informed that his statement to Schmitz could be used against him at sentencing; he was told if he pleaded guilty the district court would order treatment; he was not told prior to pleading guilty that the state would seek an upward departure; he was not guilty of the offense to which he pled; and he objected to the state's apparent claim that the plea agreement affected his ability to challenge an upward departure.

The district court held a contested hearing on Farnsworth's motion to withdraw his plea. The court weighed potential prejudice to the state against Farnsworth's arguments for withdrawal. The court noted that Farnsworth's original attorney did not provide to him or discuss with him his confession or any potential challenges to the admissibility of his confession and that it was a close question as to whether Farnsworth was aware that he was waiving potential issues surrounding his confession when he entered his plea. Because Farnsworth maintained that he would not have pleaded guilty had he known that his confession could have been suppressed, the court decided to examine the admissibility of the confession. The court acknowledged that a guilty plea normally eliminates the right to challenge the admissibility of the underlying evidence, but noted that in this case if the state were to introduce Farnsworth's confession at the sentencing trial to prove an aggravating factor for the purposes of an upward departure, Farnsworth would have the right to challenge the admissibility of his confession during the sentencing hearing.[4] The court determined that it would be unfair to allow suppression of Farnsworth's confession at a sentencing hearing but not allow its suppression at the guilt phase of a trial. The court then concluded that if the confession was indeed suppressible, it would be fair and just to allow Farnsworth to withdraw his guilty plea.

The district court therefore held a hearing to determine the admissibility of Farnsworth's confession and issued findings of fact, conclusions of law, and an order. The court, when assessing the totality of the circumstances, noted that Farnsworth had come to the police station "on his own volition," but noted that there was some question "of whether a reasonable person, after admitting some of what

---

4. Because we conclude that Farnsworth's confession was voluntary and that no fair and just reason existed to justify the withdrawal of Farnsworth's plea, we need not address the question of whether Farnsworth would have had the right to challenge the admissibility of the confession at his sentencing hearing.

the Defendant admitted, would feel that he was under arrest." [5] The court concluded that Schmitz had made several statements to Farnsworth that could be construed as promises, but that many of Schmitz's comments were "clearly intended to get [Farnsworth] talking" and Schmitz's comments were not the kind of statements that would lead an innocent person to confess to child molestation. In particular, the court found that Schmitz made offers of "help" early in the interview in exchange for Farnsworth giving a confession, but that the earlier offers of help alone were too vague to cause an innocent man to confess. The court concluded that Farnsworth's admission that he had watched pornographic movies in B.P.'s presence and touched her buttocks while masturbating were not statements induced by Schmitz's earlier offers of help but comments that reflected Farnsworth's behavior. The court noted that:

> [t]he comments made and the Defendant's emotions, which seem to indicate guilt and contrition, are very consistent with the proposition that he actually did abuse the child. Furthermore, his statements indicate that they reflect his own recollections of events, and do not appear to have been "planted" by anything that Officer Schmitz said.

The district court then expressed concern about Schmitz's later offer of help in which he claimed that he was not trying to put Farnsworth in jail but rather was "trying to get [Farnsworth] the best help [he could] so [Farnsworth] can have [his] kids still." The court noted that "[t]his statement could clearly be perceived as a promise that if the Defendant cooperated he could get help and have his kids." The court noted that after Schmitz made this offer of help, Farnsworth stated that he was not trying to lie and then stated, "She says I did it, I did it." The court concluded that, under the circumstances, Farnsworth's comment that he did whatever B.P. said he did, without full knowledge of B.P.'s accusations, "was consistent with an attempt to take advantage of the officer's offer of help" and "a clear indication that the Defendant was willing to admit to whatever he had to in order to take advantage of the officer's offer of help so that he could get his kids back." [6] Concluding that even an innocent man might have done the same thing, the court determined that everything Farnsworth said after Schmitz made the later offer of help was obtained through coercion and was suppressible. Further, because that portion of Farnsworth's confession was involuntary, the court determined that it was fair and just to allow Farnsworth to withdraw his guilty plea.

The state appealed the district court's decision, arguing that the decision had

---

**5.** The district court heard testimony from both Schmitz and Farnsworth at the omnibus hearing on the admissibility of the confession. At the hearing, Farnsworth testified that when he spoke with Schmitz he was told that "the only way [Schmitz] could help [Farnsworth] get [his] kids back is if [Farnsworth] show[ed] up and [came] to an interview with him." After further questioning, Farnsworth admitted that he knew that Schmitz was not the person who would ultimately make a decision in his case and that he understood that a judge would make any recommendations in his case. After hearing this testimony, the

district court found that Farnsworth came to the police station voluntarily. We should give deference to the district court in this finding. But the district court's conclusion that a "reasonable person * * * would feel that he was under arrest," is part of the totality of the circumstances analysis, and we do not give deference to conclusions of law.

**6.** When Farnsworth made this statement, a 72–hour hold had been placed on his children, and he had expressed concern about losing custody of his children.

critical impact and was in error. The court of appeals concluded that the district court abused its discretion when it allowed Farnsworth to withdraw his guilty plea and remanded the case for a sentencing hearing. This appeal by Farnsworth followed.

## I.

■■■ We must first determine whether the court of appeals applied the correct legal standard when it concluded that Farnsworth should not have been permitted to withdraw his guilty plea. When reviewing this case, the court of appeals noted that by entering a valid plea colloquy under Rule 15, a defendant waives all nonjurisdictional defects, including any challenges to the admissibility of a confession. *State v. Farnsworth*, No. A06–258, 2006 WL 2556703, at *1 (Minn.App. Sept.5, 2006). The court of appeals held that the district court, instead of examining the admissibility of Farnsworth's confession, should have merely determined whether Farnsworth's plea was accurate, voluntary, and intelligent. The court of appeals then determined that the district court abused its discretion when it permitted Farnsworth to withdraw his guilty plea because the plea was, in fact, accurate, voluntary, and intelligent. *Id.* at *3.

Farnsworth argues that plea withdrawal is permitted prior to sentencing under Minn. R.Crim. P. 15.05, subd. 2 (permitting withdrawal if "it is fair and just to do so") and that the court of appeals incorrectly applied that standard to the facts of his case. Farnsworth asserts that under Rule 15.05, subd. 2, because he was not aware that his confession could be suppressed, there was a fair and just reason for him to withdraw his guilty plea. The state contends that the court of appeals correctly determined that Farnsworth entered an accurate, voluntary, and intelligent guilty plea and that by entering such a plea, Farnsworth waived any challenges to the admissibility of his confession.

■■■ There is no absolute right to withdraw a guilty plea. *Shorter v. State*, 511 N.W.2d 743, 746 (Minn.1994). Instead, the Minnesota Rules of Criminal Procedure provide that when a defendant seeks to withdraw his plea before sentencing, the district court may, within its discretion, permit withdrawal "if it is fair and just to do so, giving due consideration to the reasons advanced by the defendant in support of the motion and any prejudice the granting of the motion would cause the prosecution by reason of actions taken in reliance upon the defendant's plea." Minn. R.Crim. P. 15.05, subd. 2. The defendant bears the burden of proving that there is a "fair and just" reason for withdrawing his plea. *Kim v. State*, 434 N.W.2d 263, 266 (Minn.1989).

■■■ In this case, the court of appeals concluded that because Farnsworth entered an accurate, voluntary, and intelligent guilty plea, he was precluded from withdrawing his guilty plea. It is true that a guilty plea entered by a counseled defendant has traditionally operated as a waiver of the defendant's right to challenge all nonjurisdictional defects arising prior to the entry of the plea. *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn.1980) (" 'When a criminal defendant had solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " (quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973))). But while the entry of a guilty plea may waive the defendant's right to appeal any underlying constitutional defects, it does not eliminate the defendant's right to *withdraw* his or

her guilty plea before sentencing. *See State v. Kaiser,* 469 N.W.2d 316, 319 (Minn.1991) (stating that where the defendant has entered an adequately supported guilty plea, the defendant is free to move "to withdraw his plea on the ground that withdrawal was necessary to correct a manifest injustice \* \* \* or on the ground that there was a 'fair and just' reason for his wanting to do so."); *cf. Butala v. State,* 664 N.W.2d 333, 338–39 (Minn.2003) (stating that a guilty plea " 'must be accurate, voluntary, and intelligent' " but noting that "after entry of the guilty plea and either before or after sentence, upon timely motion, a defendant has a right to withdraw his guilty plea at any time if the defendant can establish at the hearing on the motion to withdraw \* \* \* that withdrawal is necessary to correct a manifest injustice.").

▆▆▆ When a guilty plea is entered, it must be accurate, voluntary, and intelligent (that is, knowing and understanding). *State v. Trott,* 338 N.W.2d 248, 251 (Minn. 1983). "The purpose of the requirement that the plea be intelligent is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *Id.* We affirm that defendants may not withdraw their guilty pleas for simply any reason before a sentence is imposed. *Kim,* 434 N.W.2d at 266. To do so would transform the " 'process of accepting guilty pleas [into] a means of continuing the trial to some indefinite date in the future when the defendant might see fit to come in and make a motion to withdraw his plea.' " *Id.* (quoting *United States v. Suter,* 755 F.2d 523, 526 (7th Cir.1985)). But Rule 15.05, subd. 2, envisions that, in some instances, there may be a "fair and just" reason to permit plea withdrawal prior to sentencing. For instance, in *Kaiser,* the defendant entered

an accurate, voluntary, and intelligent guilty plea, but subsequently claimed that he was coerced into pleading guilty by his attorney. 469 N.W.2d at 319. In that case, we concluded that, in order to establish that a fair and just reason existed to permit withdrawal of the plea, the defendant was entitled to an evidentiary hearing to determine whether the defendant had indeed been coerced into pleading guilty. *Id.* In this case, subsequent review of Farnsworth's plea raised concerns about whether his guilty plea was intelligently entered. As in *Kaiser,* we believe that it was proper for the district court to hold a hearing to determine whether a fair and just reason existed to permit withdrawal of Farnsworth's plea. Therefore, we conclude that the court of appeals erred when it failed to consider whether a fair and just reason existed to permit plea withdrawal.

## II.

▆▆▆ We turn to the question of whether Farnsworth met his burden of establishing a fair and just reason to withdraw his plea. The decision to allow a defendant to withdraw his or her guilty plea is left to the discretion of the district court, and the court's decision will be reversed only if the appellate court determines that the district court abused its discretion in permitting the defendant to withdraw his or her plea. *Kim,* 434 N.W.2d at 266. In this case, the district court's decision to permit Farnsworth to withdraw his plea was premised solely on the court's conclusion that Farnsworth's incriminating statements to the police were inadmissible. Therefore, we must decide whether the court correctly concluded that Farnsworth's confession was inadmissible. If that conclusion was incorrect, then the court abused its discretion in permitting the withdrawal of Farnsworth's plea.

■ The voluntariness of a confession is reviewed de novo as a question of law based on "all factual findings that are not clearly erroneous." *State v. Ritt*, 599 N.W.2d 802, 808 (Minn.1999). In this case, the state has adopted all of the district court's factual findings as true. Therefore, we need only review the legal question of the voluntariness of Farnsworth's confession.

Farnsworth argues that Schmitz's promise to get Farnsworth help so that Farnsworth could retain custody of his children was so coercive that even an innocent person would falsely admit to having sexually abused his children. Farnsworth emphasizes that shortly after Schmitz promised him "help," he admitted that all of B.P.'s accusations were true without knowing what the accusations were, and he argues that his willingness to do so illustrates the coercive nature of the interview. The state argues that Schmitz's comments were not so inherently coercive that an innocent person would confess to the crime of child sex abuse. The state further contends that Schmitz's statements were well within the parameters of acceptable officer behavior established by this court.

■ We look at the totality of the circumstances to determine whether a confession was voluntary. *Ritt*, 599 N.W.2d at 808. Relevant factors include the defendant's age, maturity, intelligence, education, and experience; "the ability of the defendant to comprehend; the lack of or adequacy of warnings; the length and legality of the detention; the nature of the interrogation; whether the defendant was deprived of any physical needs; and whether the defendant was denied access to friends." *State v. Jungbauer*, 348 N.W.2d 344, 346 (Minn.1984) (citing *State*

*v. Linder*, 268 N.W.2d 734, 735 (Minn. 1978)). "[T]he question in each case is whether the defendant's will was overborne at the time he confessed." *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); *see State v. Pilcher*, 472 N.W.2d 327, 333 (Minn.1991) ("[O]ur inquiry examines whether [the police] actions, together with other circumstances surrounding the interrogation, were so coercive, so manipulative, so overpowering that [the defendant] was deprived of his ability to make an unconstrained and wholly autonomous decision to speak as he did.").

The district court concluded that while many of the relevant factors outlined in *Jungbauer* suggested that the confession was voluntary, Schmitz's statement that he was trying to get Farnsworth "the best help [he could] so you can have your kids still" was so inherently coercive that it would cause an innocent person to confess, and that the confession was involuntary. After reviewing the relevant factors, we conclude that Farnsworth's statement was voluntary and the district court erred in ordering suppression.

Farnsworth came to the police station voluntarily, and the interview itself was short—a little over an hour. While Farnsworth was not informed of his *Miranda* rights, he was told that he was not under arrest and that he could leave at any time.[7] The interview was conducted in Schmitz's office, and although Schmitz was armed, he was not in uniform. Farnsworth appears to be of normal maturity and average intelligence. Although Farnsworth's education is limited to a GED, he has work experience that includes employment in a supervisory capacity. Farnsworth has

---

7. The dissent also questions the absence of a *Miranda* warning in this case. However, on appeal, Farnsworth appears to have abandoned any argument regarding the absence of a *Miranda* warning; therefore, we will not address the issue.

previous experience with the criminal justice system, having been convicted of criminal sexual conduct in the third degree in 1994, and he was also accused of assault in 1996. Given Farnsworth's repeated mention of his fear of going to jail and losing custody of his children, we reasonably infer that Farnsworth understood the consequences of his statements to the police and comprehended the gravity of the situation. Additionally, when Schmitz tried to take Farnsworth's formal statement, Farnsworth refused, specifically stating that he had a right to remain silent and that everything he said could be used against him, which further emphasizes Farnsworth's understanding of the situation.

We next conclude that the nature of the interrogation was not so coercive as to render the confession involuntary. It is true that Schmitz did offer Farnsworth help. But we have recognized that "the police must also be allowed to encourage suspects to talk." *State v. Merrill*, 274 N.W.2d 99, 108 (Minn.1978). Moreover, we have acknowledged that the use of an empathic approach when interviewing the suspect does not alone make a confession involuntary. *Pilcher*, 472 N.W.2d at 333. In the context of the interview, many of Schmitz's statements to Farnsworth, such as "Honesty is the best thing. * * * I thought * * * I'll bring him in Monday and listen to his story and try to get you some help because that's what you need," and "we are gonna talk about what happened, why it happened, where it happened, when it happened and then we are gonna get you some help," can be construed as efforts to encourage conversation. We do not believe that Schmitz's statements, together with the other circumstances surrounding the interview, were so coercive, manipulative, or overpowering as to deprive Farnsworth of his ability to make an unconstrained and wholly autonomous decision to speak.

Schmitz's statements contained no explicit or implied promises. Rather, Schmitz's statement implied that people who commit child sex abuse need and should receive help. The nature of the questioning does not suggest that Farnsworth was led to believe that Schmitz occupied something other than an adversarial role as a questioner. In fact, Farnsworth's own statements, indicating that he was going to jail and going to lose custody of his children, illustrate Farnsworth's understanding of Schmitz's role in the interview. *See Pilcher*, 472 N.W.2d at 333–34 (concluding that the use of a sympathetic approach does not alone render a confession involuntary where the defendant exhibited a wariness of police tactics).

We have held that offers of help do not make a statement involuntary as long as the police have not implied that a confession may be given in lieu of criminal prosecution. *See State v. Thaggard*, 527 N.W.2d 804, 812 (Minn.1995); *State v. Slowinski*, 450 N.W.2d 107, 111–12 (Minn. 1990). In *Slowinski*, we concluded that, even though the arresting officers had improperly suggested that they had influence with the county attorney to argue for psychiatric help, the defendant's confession was voluntary because the officers did not promise the defendant that he would receive psychiatric help instead of being sent to prison. 450 N.W.2d at 112. Similarly, in *Thaggard*, we upheld the voluntariness of a confession because even though the defendant thought he might receive drug treatment, he understood the *Miranda* warnings and knew that what he said could be used against him, and the defendant was never told, nor did the officer imply, that he would not be prosecuted if he gave a statement. 527 N.W.2d at 811–12. In contrast, in *State v. Biron*, we concluded that the confession was involuntary where the defendant was expressly told that if he

cooperated the police would have his case brought before juvenile court, but that if he did not, they would not consider seeking juvenile court proceedings. 266 Minn. 272, 277–78, 282, 123 N.W.2d 392, 396, 399 (1963).

We conclude that in this case Schmitz's actions were more similar to those of the officers in *Slowinski* and *Thaggard* than *Biron*. Schmitz's statements contained no explicit or implied promises that Farnsworth would not be prosecuted if he confessed, and Schmitz in no way indicated that he had special influence with the district court. Moreover, nothing in Schmitz's statement that he was trying to get Farnsworth "the best help [he could] so you can have your kids still" indicated that if Farnsworth did not confess he would certainly lose custody of his children, whereas if he did confess, he would be able to retain custody. In fact, none of Schmitz's statements amounted to "persuasive arguments calculated to induce a confession." *Biron*, 266 Minn. at 282, 123 N.W.2d at 399. Rather, Schmitz's general offers of help seemed to be efforts to encourage Schmitz to talk—a tactic that we found permissible in *Merrill*.

Moreover, we do not believe that under the totality of the circumstances such a statement would have so overborne the will of an innocent person that he would have confessed to child sex abuse. In *Lynumn*, the United States Supreme Court concluded that the defendant's will was overborne and her confession was coerced and involuntary because the police told the defendant, who had no previous experience with the criminal justice system, that if she did not cooperate she would lose financial aid for her children, her children might be taken from her, and she might never see them again. 372 U.S. at 531, 534, 83 S.Ct. 917. No similar circumstances are present in this case.

Farnsworth was not threatened with the loss of custody unless he confessed. Unlike *Lynumn*, where the defendant "had no reason not to believe that the police had ample power to carry out their threats," 372 U.S. at 534, 83 S.Ct. 917, Farnsworth's own statements indicate that he was clearly aware of Schmitz's adversarial role in the interview process and the high probability that he would go to jail if he admitted to sexually abusing a child. Prior to Schmitz's "promise," Farnsworth had already expressed concern about losing custody of his children and going to jail. Farnsworth repeatedly noted that Schmitz was just trying to put him in jail. After Farnsworth admitted that he had touched B.P. while masturbating, Schmitz asked Farnsworth if "at any time during this or any other time have you done anything else to her?" Farnsworth then replied, "I'm already going to jail for it." Moments later, Farnsworth told Schmitz that he was going to lose his kids over the incident. We conclude that it is not a credible claim that Farnsworth, already aware that watching pornographic movies and masturbating while touching B.P.'s buttocks may result in criminal prosecution and jeopardize his ability to retain custody of his children, would proceed to confess to acts of penetration on the belief that confessing to those more incriminating acts would somehow permit him to retain custody. *Cf. Jungbauer*, 348 N.W.2d at 346.

Under the totality of the circumstances, we conclude that Farnsworth's confession was voluntary and that no fair and just reason exists to permit Farnsworth to withdraw his plea.

Affirmed.

HANSON, Justice (dissenting).

I respectfully dissent. I agree with the conclusion of the majority that it was with-

in the discretion of the district court to consider Farnsworth's claim that his confession was involuntary in the context of the motion to withdraw his plea of guilty under Minn. R.Crim. P. 15.05, subd. 2. But I disagree with the conclusion of the majority that the district court erred in determining that Farnsworth's confession was involuntary. I would hold that the decision of the district court, that "[p]ortions of [Farnsworth's] confession were obtained through coercion," was not clearly erroneous.

First, I note that the district court conducted an evidentiary hearing, at which both Officer Schmitz and Farnsworth testified and were cross-examined. Although we are likely in as good a position as the district court to review the transcript of the audio recording and the tape of the video recording of the interrogation of Farnsworth, I would defer to the district court's greater ability to assess the totality of the circumstances, which includes events that occurred before the interrogation began and that were only described by the testimony given at the evidentiary hearing.

I further note that the circumstances under which the interrogation was arranged were extremely coercive. On Friday, November 12, 2004, Schmitz placed a 72–hour hold on all three of the children in Farnsworth's custody—the victim for whom Farnsworth was a step-father and the two children for whom Farnsworth was the father. The papers reflecting that hold or the actions taken by the county social services were not served on Farnsworth, but Schmitz (not the county social worker) left a telephone message for Farnsworth notifying him that his children would not be returning home for the weekend. The message requested that Farnsworth call Schmitz. It did not say why the children were not returning home or why

Schmitz wanted to talk to Farnsworth. According to Farnsworth's testimony, the message referred generally to safety issues in the home concerning all three children. Farnsworth testified that he attempted to return the call, but was told that Schmitz was not in and would not be in until Monday, November 15.

On November 15, Farnsworth spoke with Schmitz by telephone. Farnsworth testified that he asked exactly what this was about, but Schmitz declined to say anything except that "it was the safety of [the] home." Farnsworth testified that Schmitz told him that the only way he could help him get his children back is if Farnsworth came in for an interview.

This background is important to the question of whether Farnsworth "came to the police station voluntarily," as determined by the majority. I would conclude that Farnsworth did not come voluntarily because his children had been taken from him, the notice of this fact was given to him by police, not by county social services, and the notice made it clear that Farnsworth would have to go to the police station for an interview if he wanted to get his children back. Given the general acknowledgment of Farnsworth's close relationship with the children, whose custody he had fought for in court proceedings, it is hard to imagine what more coercive threat could have been made to get Farnsworth to come in for the interview.

Further, I am deeply concerned with the absence of any *Miranda* warning at the outset of the interview. Prior to the interview, Schmitz had fully interviewed the victim and clearly had probable cause to arrest Farnsworth, based on the same facts that supported his issuance of a 72–hour hold on the children. Given the coercive circumstances surrounding the arrangement for the interview, I would conclude that the interview had sufficient

earmarks of a custodial interrogation to require that a *Miranda* warning be given.

It is true that Schmitz attempted to create the appearance of a noncustodial interview—he went out of his way to say that Farnsworth was not under arrest and was free to leave—but this was only a façade. Farnsworth had already been told that the only way he could get his children back was to sit for the interview. A reasonable person in Farnsworth's situation would understand that he was only free to leave if he was willing to lose custody of his children.

Schmitz had made himself the sole doorway that Farnsworth had to go through to get his children back. And Schmitz knew, because of the leverage he had established through the removal of the children, that he did not need to formally arrest Farnsworth in order to keep him under police control. Even then, Schmitz, with his badge and gun visible, escorted Farnsworth to his office and closed the door. And on the one occasion when Farnsworth asked to go outside to smoke, Schmitz told him to leave his coat in the office, accompanied him outside, and did not leave his side.

Surely, Farnsworth did not believe that he was free to go after Schmitz brought up the touching allegation. The district court credited Farnsworth's testimony on this subject, finding that "[a]fter the officer brought up the touching allegation, the [d]efendant felt that he could not just get up and walk out of the station."

I would conclude that the interrogation was custodial and that the words "you are not under arrest" and "you can get up and walk out any time you want" were nothing more than a subterfuge to avoid giving a *Miranda* warning. In those cases where we have concluded that the totality of the circumstances demonstrate that a confession was voluntary, we have relied signifi-cantly on the fact that the defendant was given a *Miranda* warning. *See State v. Thaggard,* 527 N.W.2d 804, 811–12 (Minn. 1995) ("The trial court found that although defendant may have believed he might receive treatment, he understood the *Miranda* warning that any statement he made would be used against him and he was not told, nor was it implied, that he would not be prosecuted for the rape if he gave a statement."). *See, e.g., State v. Slowinski,* 450 N.W.2d 107, 111 (Minn. 1990) (noting that the defendant "was read the *Miranda* warning at the outset and indicated that he understood his rights.").

These circumstances call the voluntariness of Farnsworth's confession into question before even getting to the fact found to be most crucial by the district court— the representation by Schmitz that he was not looking to put Farnsworth away but was "trying to get [Farnsworth] the best help I can so you can have your kids still." This statement was false. Schmitz was trying to get admissions that he knew would support a conviction that would expose Farnsworth to a substantial prison sentence. Schmitz also knew that this conviction would mean that Farnsworth would definitely lose custody of his children. I agree with the district court that this representation was a promise that was so alluring that it could cause an innocent person in Farnsworth's position to confess. Farnsworth's statement "What do I gotta do?" shows the confusion and frustration he was experiencing. And Farnsworth's response that "she says I did it, I did it," shows that he was trying to say what Schmitz wanted him to say in order to get what Schmitz promised.

Based on these facts, I disagree with the conclusion of the majority that "Farnsworth was not threatened with the loss of custody unless he confessed." Although that threat was not made in those precise

terms, the implication of the first telephone message on Friday, the telephone conversation on Monday, and the representations made by Schmitz during the interrogation were clear: If you want your children back, you had better confess. Schmitz totally rejected Farnsworth's earlier denials and made clear what he wanted to hear from Farnsworth. I would defer to the district court's finding that "[t]he [d]efendant testified that he took Officer Schmitz's comments to mean that if the [d]efendant confessed, he would get to go home with his kids, get an assessment done and get treatment."

Thus, the facts of this case are closely parallel to those in *State v. Biron*, which held that the promise to bring the case in juvenile court if the defendant cooperated was "calculated to induce a confession." 266 Minn. 272, 282, 123 N.W.2d 392, 399 (1963).

I would reverse the court of appeals' decision and reinstate the district court's order permitting Farnsworth to withdraw his guilty plea.

PAGE, Justice (dissenting).

I join in the dissent of Justice Hanson.