*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1340**

Kodjo Agbelengeor Anyide-Ocloo, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 6, 2015
Reversed and remanded
Hooten, Judge**

Olmsted County District Court
File No. 55-CR-12-1671

Eric L. Newmark, Jill A. Brisbois, Newmark Law Office, LLC, Minneapolis, Minnesota
(for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Senior Assistant County
Attorney, Rochester, Minnesota (for respondent)

        Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and

Klaphake, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**HOOTEN**, Judge

Appellant argues that the postconviction court abused its discretion in summarily denying his postconviction petition seeking withdrawal of his guilty plea. Appellant contends that his guilty plea was involuntary because he had ineffective assistance of defense counsel and misunderstood the adverse immigration consequences of his plea. Because the postconviction court abused its discretion by denying appellant's petition without holding an evidentiary hearing, we reverse and remand.

**FACTS**

On March 13, 2012, appellant Kodjo Agbelengeor Anyide-Ocloo was charged with fifth-degree possession of a controlled substance under Minn. Stat. § 152.025, subd. 2(a)(1) (2010). According to the complaint, Rochester police conducted a controlled purchase of crack cocaine using an informant on February 7, 2012. In connection with information obtained from the informant and police observation, officers traced the sale to someone in appellant's vehicle. Officers stopped the vehicle and, upon searching appellant's person, discovered loose pills in his pocket, one of which was identified as clonazepam, a controlled substance.

Respondent State of Minnesota and appellant reached a plea bargain in which appellant agreed to plead guilty in exchange for the state's recommendation that appellant be given the presumptive sentence under the sentencing guidelines, including a stay of adjudication if appellant was eligible for such disposition. At the plea hearing on April 19, 2012, appellant admitted that he was in possession of the clonazepam pill on the date

2

of the offense. He explained that he worked as a nursing home caregiver who often dispensed medication to patients and that he had found the clonazepam pill, along with other medications, while cleaning at work. He claimed that he had intended to inform his supervisor about the pills that he had found, but failed to do so before he was pulled over by police the next day. Appellant further stated that he had no involvement with the controlled drug purchase the police were investigating, and that he was merely giving a ride to friends when his vehicle was pulled over and he was searched by police.

Appellant first discussed his immigration status with the district court:

> THE COURT: Are you a United States citizen?
> APPELLANT: No, your Honor.
> THE COURT: All right. I will have [defense counsel] and [the prosecutor] inquire a little further about that, but as I understand it, this is a recommended 152.18 disposition, *so I don't know if that brings immigration into play or not.* I don't know if you need a conviction or just a guilty plea. Does anyone know the answer to that?
> DEFENSE COUNSEL: What I have been advising my client is that . . . I'm not an immigration lawyer, but any time someone enters a plea of guilty, *they should be [wary] of any effects that might have on his immigration status. My client is aware that it could potentially affect his status*, but he is willing to go through with the plea no matter what.
> THE COURT: And that's correct then; is that right?
> APPELLANT: Yes, your Honor.

(Emphasis added.) After appellant then established the above factual basis of his plea with his counsel, he was examined by the prosecutor:

> PROSECUTOR: And it has been mentioned here that you are not a citizen of the United States, correct?
> APPELLANT: Yes.
> PROSECUTOR: What is your immigration status?
> APPELLANT: I'm a permanent resident.

3

> PROSECUTOR: And have you investigated what the possible consequences of what a conviction in this matter might be?
> APPELLANT: Yes.
> PROSECUTOR: What have you learned?
> APPELLANT: *I could be denied for citizenship.*
> PROSECUTOR: *Is that all?*
> APPELLANT: *Yes.*
> PROSECUTOR: Are you satisfied that you're informed about the possible consequences of a conviction in this matter on your immigration status?
> APPELLANT: Yes.
> PROSECUTOR: And knowing what you know, do you still wish to proceed with a guilty plea today?
> APPELLANT: Yes.

(Emphasis added.) In addition, appellant signed a plea petition form dated the same day as the plea hearing. Upon questioning by the district court, appellant acknowledged that he had signed the plea petition form, reviewed each paragraph with his attorney, and understood each numbered paragraph to the best of his ability. Paragraph 27 of the plea petition provided:

> My attorney has told me and I understand that if I am not a citizen of the United States[,] this plea of guilty may result in deportation, exclusion from admission to the United States of America or denial of citizenship.

The district court accepted appellant's guilty plea and at sentencing granted appellant a stay of adjudication under Minn. Stat. § 152.18, subd. 1 (2010). Accordingly, there was no conviction entered against appellant, and he was sentenced to five years' probation, 100 hours of community service, and a small fine.

On March 27, 2014, appellant filed a petition for postconviction relief seeking withdrawal of his guilty plea, alleging that, under *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), he received ineffective assistance of counsel when his trial attorney failed to

4

inform him that deportation was a consequence of his guilty plea. The postconviction court summarily denied appellant's postconviction petition, concluding that appellant had failed to present sufficient evidence to warrant an evidentiary hearing and that the record conclusively showed that he was not entitled to postconviction relief. This appeal followed.

## DECISION

Appellant contends that he is entitled to withdrawal of his guilty plea because his attorney failed to adequately inform him of the immigration consequences of his plea. After sentencing, a motion to withdraw a plea must be raised in a postconviction petition under chapter 590. *James v. State*, 699 N.W.2d 723, 727 (Minn. 2005); *see* Minn. Stat. § 590.01 (2014). A defendant may withdraw a guilty plea at any time if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Id.* Ineffective assistance of counsel renders the plea involuntary and thus constitutionally invalid. *Butala v. State*, 664 N.W.2d 333, 341 (Minn. 2003); *see also Hill v. Lockhart*, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369 (1985).

Claims of ineffective assistance of counsel are analyzed under the two-pronged analysis from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *State v. Bobo*, 770 N.W.2d 129, 137 (Minn. 2009). First, the defendant must show that his or her counsel's representation fell below an objective standard of reasonableness. *Id.* On review, "[t]here is a strong presumption that counsel's performance was reasonable."

5

*Schleicher v. State*, 718 N.W.2d 440, 447 (Minn. 2006) (quotation omitted). Second, the defendant must show that "a reasonable probability exists that the outcome would have been different but for counsel's errors." *Bobo*, 770 N.W.2d at 137 (quotation omitted).

The postconviction court did not hold an evidentiary hearing because it determined that the record conclusively showed that appellant had not proven his ineffective-assistance claim. Postconviction courts are required to hold an evidentiary hearing on a postconviction petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014); *see also* Minn. Stat. § 590.03 (2014) ("The court shall liberally construe the petition and any amendments thereto . . . ."). A petitioner asserting an ineffective-assistance-of-counsel claim should be granted an evidentiary hearing if he or she has "allege[d] facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test" under *Strickland*. *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012). "We review the denial of a postconviction evidentiary hearing for an abuse of discretion," *Hooper v. State*, 838 N.W.2d 775, 786 (Minn. 2013), but resolve any doubts about whether to conduct an evidentiary hearing in favor of the petitioner, *State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013). If, when viewing the petitioner's allegations in the light most favorable to him or her and considering the "files and records of the proceeding, including the [s]tate's arguments," there are material facts in dispute which must be resolved to determine the issues on the merits, the postconviction court has abused its discretion by not holding an evidentiary hearing. *Id.* at 506 (quotation omitted).

# I.

Appellant first argues that the postconviction court erred by determining that the record of the plea hearing and plea petition established that he was adequately informed of adverse immigration consequences by his attorney. In *Padilla*, the Supreme Court held that the Sixth Amendment requires that defense counsel provide legal advice regarding the immigration consequences of a defendant's guilty plea. 130 S. Ct. at 1482, 1486. The advice that counsel must provide varies depending on the immigration statute applicable to the guilty plea in question. *Id.* at 1483 ("Immigration law can be complex, and it is a legal specialty of its own."). When applicable immigration law "is not succinct and straightforward," the required duty is "more limited" and the attorney need not do more than advise the client that the guilty plea "may carry a risk of adverse immigration consequences." *Id*. But, when the deportation consequence is "truly clear" because "the terms of the relevant immigration statute are succinct, clear, and explicit," then "the duty to give correct advice is equally clear." *Id*. at 1483. In *Padilla*, the Court found the performance of Padilla's counsel to be constitutionally deficient because he had incorrectly assured his client that conviction would not result in deportation, when the applicable immigration statute clearly indicated otherwise. *Id.* at 1483 (citing 8 U.S.C. § 1227(a)(2)(B)(i) (2006)).

Appellant argues that the postconviction court erred by failing to consider whether the applicable immigration statutes were "truly clear," thus giving rise to the "equally clear" duty of his defense attorney to provide correct advice. *See id.* at 1483. However,

we need not resolve this issue,[1] because the record does not conclusively negate, and in fact supports, appellant's claim that he was not adequately informed that deportation was even a *potential* consequence of his decision to plead guilty, much less a near-certain one.

At the plea hearing, appellant's counsel initially informed the district court that appellant was "aware" that this conviction "could potentially affect his status," but mentioned nothing of deportation consequences specifically. Later, appellant was asked by the prosecutor whether he had investigated the consequences of his plea upon his citizenship and immigration status. He answered in the affirmative. When questioned as to what those "possible consequences" were, appellant responded that he learned that he "could be denied for citizenship" but understood that there were no other consequences. There is no indication in the record that defense counsel, the prosecutor, or the district court intervened at this point to ensure that appellant understood that deportation was also a "possible consequence[]" of his plea. There is also nothing in the record regarding the nature of appellant's investigation of the possible consequences of the plea and whether it was his defense attorney or another attorney who provided him with the misinformation regarding those consequences.

---

[1] We note, however, that appellant has been rendered deportable by virtue of the exact statute found by the Court to be "succinct, clear, and explicit in defining the removal consequences" for the defendant in *Padilla*. 130 S. Ct. at 1483; *see* 8 U.S.C. § 1227(a)(2)(B)(i) (2012); *cf. Padilla*, 130 S. Ct. at 1477 n.1 (noting that "virtually every drug offense except for only the most insignificant marijuana offenses[] is a deportable offense" under this statute). Moreover, immigration statutes are similarly clear that a guilty plea accompanied by "some form of punishment" constitutes a "conviction" for immigration purposes. 8 U.S.C. § 1101(a)(48)(A) (2012).

At a minimum, the record demonstrates that appellant misunderstood the possible consequences of his plea upon his immigration status and that his defense counsel failed to intervene to correct such misunderstanding. Admittedly, defense counsel's failure to correct appellant's misunderstanding is arguably less egregious than the attorney's misstatement of the law in *Padilla* in providing Padilla "false assurance that his conviction would not result in his removal from this country." *Id.* at 1483. But, here, counsel's failure to correct appellant's mistaken understanding that denial of citizenship was the *only* potential immigration consequence of his plea could be a substantially equivalent violation of appellant's Sixth Amendment right to effective counsel.

As this appeal only presents the issue of whether appellant was entitled to an evidentiary hearing, "we need not determine whether his counsel actually fell below the objective standard required by *Strickland*" and instead "merely need to decide whether [appellant's] allegations and the files and records fail to *conclusively* show that counsel fell below this standard." *See Nicks*, 831 N.W.2d at 508. Taking appellant's allegations in the light most favorable to him and considering the record before us, appellant has raised an issue of material fact as to the immigration advice provided to him by his attorney such that he could satisfy the first prong of the *Strickland* test if his allegations are proven. The postconviction court therefore abused its discretion by determining that appellant was not entitled to an evidentiary hearing on this issue.

## II.

Appellant further argues that the postconviction court abused its discretion by concluding that he had not shown prejudice under the second prong of *Strickland*. When

9

a defendant seeks to withdraw a guilty plea by asserting that his or her counsel provided ineffective assistance, the defendant has the burden of proving prejudice by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370; *Campos v. State*, 816 N.W.2d 480, 486 (Minn. 2012); *see also Padilla*, 130 S. Ct. at 1485 ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). "[T]he question [of] whether a given defendant has made the requisite showing will turn on the facts of a particular case." *Roe v. Flores-Ortega*, 528 U.S. 470, 485, 120 S. Ct. 1029, 1039 (2000).

Postconviction petitions must contain a "statement of the facts and the grounds upon which the petition is based and the relief desired." Minn. Stat. § 590.02, subd. 1(1) (2014). In his petition, appellant asserted that had he been fully advised of the immigration consequences of his plea, he would have proceeded to trial, "as an acquittal would have been the only result which would have ensured he would not be removed." The postconviction court concluded that appellant had failed to allege sufficient facts showing prejudice because his decision to accept a stay of adjudication "with no jail consequence[] was not irrational . . . based upon the evidence [that] there was a strong likelihood of conviction which would not have improved his chance of remaining in the United States." But, the relevant inquiry here is not whether appellant's guilty plea was rational based solely on the likelihood of conviction, but whether a rejection of that plea would have been rational given both the circumstances of the case *and* the assumption

10

that appellant's attorney had sufficiently ensured that appellant understood that deportation was a possible consequence of his plea. *See Padilla*, 130 S. Ct. at 1485.

Viewing appellant's allegations in the light most favorable to him, it is possible that if he had been properly apprised that he would become deportable as the result of his plea, he would have had ample incentive to proceed to trial and virtually no incentive to plead guilty. While appellant makes no arguments regarding the likelihood of conviction, at the very least he would have had a chance, however slim, to avoid deportation by taking his case to trial and seeking acquittal. By pleading guilty, appellant effectively conceded any chance to remain in the country.

Moreover, the only benefit appellant obtained by pleading guilty was the state's recommendation that appellant receive the presumptive sentence under the Minnesota sentencing guidelines, including a recommendation for a section 152.18 disposition if he was eligible. If appellant had proceeded to trial and had been found guilty, he still might have received a stay of adjudication unless the district court decided to upwardly depart from the guidelines. *See State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (noting that "[a] sentencing court 'must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances'" justifying a departure from the presumptive range (quoting Minn. Sent. Guidelines 2.D.1)). With these considerations in mind, appellant's rejection of the plea bargain offer, if he had received and understood accurate advice from his attorney, could have been a rational choice under the circumstances.

In order for the postconviction court to deny appellant his right to evidentiary hearing, "the petition and the files and records of the proceeding" must "*conclusively* show that the petitioner is entitled to no relief."  Minn. Stat. § 590.04, subd. 1 (emphasis added).  In his petition, appellant claimed that he would not have pleaded guilty had he been advised by his counsel of the possible immigration consequences of his conviction. He was entitled to an attempt to prove this claim by testifying at an evidentiary hearing. We conclude that the postconviction court abused its discretion by holding that appellant was conclusively entitled to no relief, and reverse and remand in order for an evidentiary hearing to be held by the postconviction court.

**Reversed and remanded.**