STATE of Minnesota, Respondent,

v.

Rashad Arthur RALEIGH, Appellant.

No. A08–2273.

Supreme Court of Minnesota.

Feb. 4, 2010.

92

Lori Swanson, Attorney General, St. Paul, MN; Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for respondent.

Cathryn Y. Middlebrook, Assistant State Public Defender, St. Paul, MN, for appellant.

OPINION

MEYER, Justice.

Appellant Rashad Arthur Raleigh pled guilty to first-degree premeditated murder for the death of Howard Porter. The issue in this case is whether the district court should have granted appellant's presentence motion to withdraw his plea under either the "manifest injustice" or "fair and just" standard of Minn. R.Crim. P. 15.05, subds. 1, 2. The district court denied appellant's motion to withdraw his plea under both standards. We affirm.

On January 24, 2008, a Hennepin County grand jury indicted Raleigh on one count of first-degree premeditated murder and one count of first-degree felony murder for the death of Howard Porter.

At his plea hearing, Raleigh affirmed the following facts regarding Porter's death. On May 18, 2007, Raleigh, Tonya Washington, and Fredquinzo King were drinking and using drugs at a house in St. Paul. The three decided to have Washington go out and bring a man back to the house, and while Washington performed an act of prostitution with the man, Raleigh and King would rob him. Washington left and returned with a man who, according to Raleigh, was driving a "fancy" car. During sexual activity between Washington and the man, Raleigh and King entered the room to rob him. Raleigh had a gun. The man resisted and Raleigh hit him in the head. King also hit the man in the head with a chair or stool. Raleigh and King beat the man until he no longer resisted.

Raleigh and King then went outside to look in the man's car. They discovered that the man was Howard Porter, a Ramsey County probation officer. Not wanting Porter to identify them, the two returned to the house and assaulted Porter again to "finish him off." Believing Porter to be dead, Raleigh and King drove Porter to North Minneapolis, dumped him in an alley, and left the car elsewhere. Porter was, in fact, alive when the men dumped him in the alley. He was found and taken to the hospital where he died one week later. Raleigh does not dispute that the blows to Porter's head administered at the house in St. Paul on May 18, 2007, caused Porter's death.

On November 21, 2007, Raleigh was charged by complaint with second-degree murder in Hennepin County District Court. Two months later, a grand jury indicted Raleigh on one count of first-degree premeditated murder and one count of first-degree felony murder.

On August 11, 2008, Raleigh pled guilty to first-degree premeditated murder on the agreement that the State would dismiss his felony murder charge and not prosecute him for a triple homicide in Ramsey County for which he was also under investigation. Raleigh's counsel was present at the plea hearing. During the hearing, Raleigh's attorney asked him a series of questions to support the plea. Through this questioning, Raleigh confirmed that he had signed a petition to plead guilty on August 6, 2008, after reviewing the plea with his attorney and an investigator. Raleigh further confirmed that he understood entering the plea meant he waived his rights to address irregularities at his grand jury proceeding, have a jury trial, and exercise his Fifth Amendment rights. Raleigh also confirmed that it was "never [his] intention" to have his case tried on "some lesser degree of homicide." and that he understood his sentence would be life imprisonment without the possibility of release, the "most severe punishment the State of Minnesota can give anyone." He confirmed that he understood the plea did not prevent federal charges from being filed against him. Last, Raleigh confirmed that he understood that it is "highly unusual for someone to plead guilty to a life sentence." The court then asked Raleigh if he had a "full opportunity to discuss [his] case" with his attorney and if he was satisfied with his attorney's work; Raleigh confirmed that he was. Next, Raleigh's attorney questioned him as to the facts of the murder. Finally, the court accepted Raleigh's plea.

In the days immediately following the plea hearing, Raleigh questioned his plea in a series of phone calls to members of his family. Raleigh also claims he heard voices and experienced trouble sleeping after his plea; he requested to see a psychiatrist, with whom he met on August 20, 2008. Raleigh moved orally to withdraw his guilty plea, and at an August 29, 2008, hearing the district court heard and considered the motion.

Raleigh's attorney argued at the motion hearing that the court should permit withdrawal because stress, improper pressure to plead guilty, mental health issues, and not understanding the plea's consequences governed Raleigh's decision to plead guilty. The State vigorously opposed the motion, arguing that Raleigh failed to present any evidence to authorize withdrawal and that Raleigh's arguments were insufficient for the court to find that Raleigh misunderstood the consequences of his plea or experienced mental health problems. The State further observed that at the plea hearing the court went to great lengths to ensure Raleigh understood the plea's consequences. The district court denied Raleigh's motion to withdraw his plea, noting that Raleigh failed to submit any evidence to support the withdrawal motion. In denying Raleigh's motion, the court held that the plea was valid, that withdrawal would prejudice the State, and that Raleigh failed to advance reasons why withdrawal would be "fair and just." This appeal followed.

██ A defendant has no absolute right to withdraw a guilty plea after entering it. *Perkins v. State*, 559 N.W.2d 678, 685 (Minn.1997). Withdrawal is permitted in two circumstances. First, a court must allow withdrawal of a guilty plea if withdrawal is necessary to correct a "manifest injustice." Minn. R.Crim. P. 15.05, subd. 1. Second, a court may allow withdrawal any time before sentencing if it is "fair and just" to do so. Minn. R.Crim. P. 15.05, subd. 2. Raleigh argues the district court erred by not granting his withdrawal motion under either standard.

## I.

We first examine whether Raleigh was entitled to withdraw his plea because withdrawal was necessary to avoid a manifest injustice. According to Minn. R.Crim. P. 15.05, subd. 1, "The court shall allow a defendant to withdraw a plea of guilty upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." A manifest injustice exists if a guilty plea is not valid. *State v. Theis,* 742 N.W.2d 643, 646 (Minn.2007). To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent. *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *State v. Trott,* 338 N.W.2d 248, 251 (Minn.1983). A defendant bears the burden of showing his plea was invalid. *Alanis v. State,* 583 N.W.2d 573, 577 (Minn.1998). Assessing the validity of a plea presents a question of law that we review de novo. *See State v. Rhodes,* 675 N.W.2d 323, 326 (Minn.2004).

### Accuracy

The accuracy requirement protects a defendant from pleading guilty to a more serious offense than that for which he could be convicted if he insisted on his right to trial. *Trott,* 338 N.W.2d at 251. To be accurate, a plea must be established on a proper factual basis. *State v. Ecker,* 524 N.W.2d 712, 716 (Minn.1994). The district court typically satisfies the factual basis requirement by asking the defendant to express in his own words what happened. *Trott,* 338 N.W.2d at 251. The court should be particularly wary of situations in which the factual basis is established by asking a defendant only leading questions. *Ecker,* 524 N.W.2d at 716. Still, a defendant may not withdraw his plea simply because the court failed to elicit proper responses if the record contains sufficient evidence to support the conviction. *See State v. Nelson,* 311 Minn. 109, 110, 250 N.W.2d 816, 817 (1976).

Raleigh challenges the accuracy of his plea on two points. First, he argues the facts do not establish the element of premeditation. "Premeditation" means to "consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn.Stat. § 609.18 (2008). To prove premeditation, the facts must establish " 'that some appreciable period of time passed after the defendant formed the intent to kill, during which the statutorily required consideration, planning, preparation, or determination took place.' " *See State v. McArthur,* 730 N.W.2d 44, 49 (Minn.2007) (quoting *State v. Moua,* 678 N.W.2d 29, 39 (Minn. 2004)). At the plea hearing, Raleigh gave an affirmative response to this question from his attorney:

> And just so we're clear here, [the beating] happened not only before you went out to look at the car, but that actually was what you had in mind when you came back from the car, to finish [Porter] off?

This exchange reveals that Raleigh decided to kill Porter upon discovering Porter's identity in Porter's car; he formed the statutorily required determination to kill Porter in the "appreciable time" it took him to return to the house to beat Porter a second time to "finish [Porter] off." Accordingly, the factual basis was sufficient to establish premeditation.

Raleigh further argues that his plea was not accurate because he answered only leading questions throughout the plea hearing. The record confirms that Raleigh never stated in his own words what happened and throughout the plea hearing the district court asked Raleigh no questions. Instead, the court established the factual basis for the plea by permitting

defense counsel to ask Raleigh a series of leading questions.

We have long discouraged this practice. In *State v. Hoaglund*, we stated: "It is to be hoped that the trial judge, in [accepting a plea], will ask the questions with respect to the factual basis for the crime so as to avoid the rather common inclination of counsel to elicit these facts by leading questions." 307 Minn. 322, 326, 240 N.W.2d 4, 6 (1976). We elaborated on the preferred questioning method in *State v. Trott*, stating:

> The usual way in which the factual basis requirement is satisfied is for the court to ask the defendant to express in his own words what happened. The defendant's statement usually will suggest questions to the court which then, with the assistance of counsel, can interrogate the defendant in further detail.

338 N.W.2d at 251 (citation omitted). Eleven years later, we addressed the topic again in *Shorter v. State*, 511 N.W.2d 743, 744–45, 747 (Minn.1994). In *Shorter*, we noted that only the defense counsel questioned Shorter, that Shorter generally gave only yes or no answers, that the judge did not question Shorter, and that Shorter was never asked to describe the incident that gave rise to the charge. *Id.* at 744–45. In holding that Shorter was entitled to withdraw his plea to correct a manifest injustice, we expressed the following concern regarding the plea hearing proceedings:

> We also have misgivings regarding the trial court's acceptance of Shorter's plea. We find it troubling that the court did not conduct any questioning of the defendant, particularly after the defense attorney merely asked leading questions requiring only that the defendant acknowledge the state's evidence as to key elements of the crime. We have previously stated that the trial court bears

the primary responsibility to advise and interrogate the defendant in sufficient detail to establish an adequate factual basis for the plea. In reversing the judgment of conviction upon a guilty plea in *Hoaglund*, we stated that we hoped that trial judges would ask questions with respect to the factual basis for the crime so as to avoid the inclination of counsel to elicit those facts through leading questions. The court in this case asked no questions at all and based its acceptance of the plea on just such leading questions.

*Id.* at 747 (citations omitted). Later that year, we cited *Shorter* in *Ecker*, reiterating that "we again discourage the use of leading questions to establish a factual basis." 524 N.W.2d at 717.

*Hoaglund*, *Trott*, *Shorter*, and *Ecker* span two decades, reflect a variety of charges, and include both *Alford* and non-*Alford* pleas. Together, the cases make clear that we generally discourage the practice of establishing a guilty plea's factual basis by permitting counsel to ask leading questions of a defendant, with the court remaining silent. Here, we discourage that practice yet again and encourage district courts to take an active role in asking direct questions of defendants during plea hearings.

Ultimately, the accuracy requirement ensures that a defendant does not plead guilty to a crime more serious than that of which he could be convicted if he elected to go to trial. *Trott*, 338 N.W.2d at 251. Raleigh's plea satisfies this objective because the answers Raleigh gave to counsel's questions establish that he formed the statutorily required determination to kill Porter in the time it took to return to the house to beat Porter a second time. The answers he gave established premeditation, the only element of the crime Raleigh asserts was not factually established.

Furthermore, as noted, the factual basis for Raleigh's plea is sufficient, despite its disfavored format. Thus, Raleigh's challenges to both the form and the substance of the accuracy of his plea fail, and we hold that Raleigh's plea was accurate.

*Voluntariness*

To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement. *State v. Brown*, 606 N.W.2d 670, 674 (Minn.2000). The voluntariness requirement ensures a defendant is not pleading guilty due to improper pressure or coercion. *Trott*, 338 N.W.2d at 251. Whether a plea is voluntary is determined by considering all relevant circumstances. *State v. Danh*, 516 N.W.2d 539, 544 (Minn.1994) (citing *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

Raleigh claims his plea was involuntary in two ways. First, Raleigh argues he was under extreme stress and not thinking rationally when he entered his plea. He urges that he must have been improperly pressured because pleading guilty to an offense punishable by life without release to avoid additional life sentences is illogical. Raleigh offers no further explanation of how stress, irrational thinking, improper pressure, or coercion influenced his plea decision, nor does he cite any authority permitting a plea withdrawal under these circumstances. Indeed, the record indicates that it was Raleigh who suggested the plea. Phone records of conversations between Raleigh and various family members intimate that Raleigh may have been motivated to plead guilty to avoid the stress of trial and ongoing publicity surrounding the murder. Finally, both counsel and the court made Raleigh aware of the unusual nature of his plea. These facts show acceptance and understanding of the plea, not improper pressure or coercion. Thus, neither stress nor irrational thinking rendered Raleigh's plea involuntary.

Second, Raleigh argues he pled guilty out of fear of receiving the death penalty. Again, he offers no support in the record for this argument. Phone records reveal that Raleigh was concerned about federal charges but not that he believed the plea protected him from federal charges. Moreover, at the plea hearing, Raleigh's attorney asked: "And it's clear, is it not, that the U.S. Attorney's office, the federal court system, is not bound by anything we do or say here today, you understand that?" Raleigh answered: "Yes, I do." Based on this exchange, Raleigh could not have reasonably believed his plea was necessary to avoid federal charges, including any charges punishable with the death penalty. Accordingly, Raleigh failed to show his plea was involuntary.

*Intelligence*

The intelligence requirement ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). "Consequences" refers to a plea's direct consequences, namely the maximum sentence and fine. *Alanis v. State*, 583 N.W.2d 573, 578 (Minn.1998).

Raleigh makes no claim that he misunderstood the charges against him or the rights he waived; he contends only that he misunderstood the consequences of his plea. Here, the consequence of pleading guilty to first-degree premeditated murder is a sentence of life without the possibility of release. Minn.Stat. § 609.106, subd. 2(1) (2008). The record is clear that Raleigh gave an affirmative answer to this question from his attorney: "When we come back for sentencing, you're going to get a life without parole

sentence, do you understand that?" Raleigh points to nothing in the record to contradict his answer. Therefore, we conclude that Raleigh understood the direct consequence of his plea—a sentence of life without the possibility of release. Because he understood the plea's consequences, we hold that Raleigh's plea was intelligent.

Because Raleigh has not shown his plea to be inaccurate, involuntary, or unintelligent, Raleigh has failed to show his plea was invalid. He is therefore not entitled to withdraw his plea to "correct a manifest injustice" under Minn. R.Crim. P. 15.05, subd. 1.

## II.

■■■■ We turn to the question of whether the district court should have granted Raleigh's plea withdrawal motion under the "fair and just" standard of Minn. R.Crim. P. 15.05, subd. 2. The rule reads:

> In its discretion the court may also allow the defendant to withdraw a plea at any time before sentence if it is fair and just to do so, giving due consideration to the reasons advanced by the defendant in support of the motion and any prejudice the granting of the motion would cause the prosecution by reason of actions taken in reliance upon the defendant's plea.

The "fair and just" standard requires district courts to give "due consideration" to two factors: (1) the reasons a defendant advances to support withdrawal and (2) prejudice granting the motion would cause the State given reliance on the plea. *Id.* A defendant bears the burden of advancing reasons to support withdrawal. *Kim v. State,* 434 N.W.2d 263, 266 (Minn.1989). The State bears the burden of showing prejudice caused by withdrawal. *State v. Wukawitz,* 662 N.W.2d 517, 527 (Minn.

2003). We review a district court's decision to deny a withdrawal motion for abuse of discretion, reversing only in the "rare case." *Kim,* 434 N.W.2d at 266.

■■■■ We first review the district court's assessment of the reasons Raleigh gave to support withdrawal of his plea. At the hearing, Raleigh asserted that the court should grant withdrawal because he was under stress, felt pressured to plead guilty, and did not fully appreciate or understand the consequences of his plea. Yet Raleigh failed to provide any evidentiary support for the reasons he advanced. The court at the plea withdrawal hearing provided Raleigh the opportunity to address the court, but he inexplicably declined.[1] Because Raleigh failed to substantiate the reasons he advanced to support withdrawal, the district court could only consider Raleigh's argument in the context of the record and evidence offered by the State. Nothing in the record reveals that Raleigh felt pressured to plead guilty; to the contrary, the plea hearing transcript indicates that he suggested the plea and that counsel and the court emphasized to Raleigh how unusual his plea was. Similarly, nothing in the record shows that Raleigh did not understand the consequence, namely the corresponding sentence, of his plea. As previously discussed, Raleigh affirmed that he understood he was accepting a sentence of life without the possibility of release. Raleigh offers no other reasons why withdrawal would be "fair and just," and we hold him to the reasons advanced. Because Raleigh failed to provide any valid reason why withdrawal would be "fair and just," the district court did not abuse its discretion in concluding that Raleigh

---

1. While Raleigh would have been subject to cross-examination if he had testified at the plea hearing or plea withdrawal hearing, his testimony would have been inadmissible under Minn. R.Crim. P. 15.06 at a subsequent trial.

failed to advance a credible reason to support withdrawal of his plea.

We next review the district court's assessment of the potential prejudice to the State that would be caused by withdrawal. The court concluded that the State would suffer "serious prejudice" if the motion to withdraw was granted. The court noted that it had been almost 16 months since the alleged crime; memories fade and witnesses become unavailable. Two witnesses for the State had already died. The court relied on the prosecutor's representation that the State had intended to try Raleigh first, and that since the time of Raleigh's guilty plea, all of the State's efforts had been focused on the trial of King. The court further relied on the prosecutor's representation that a continuance to try Raleigh first would result in witnesses "becoming more uncooperative and more witnesses dying, moving or otherwise becoming unavailable." The court also noted that withdrawal would prejudice the State by affecting motions regarding the joinder or severance of King's and Raleigh's trials. Finally, the court noted that due to Raleigh's plea, the State had turned its focus to King's trial and stopped searching and interviewing witnesses for Raleigh's case.

We believe the prejudice to the State was overstated by the prosecutor and the court. Raleigh's motion was, without question, timely. He determined to withdraw his plea within days of entering it. The State could easily have resumed handling its joinder or severance motions and preparing for trial. Indeed, the State had continued to prepare and secure witnesses for King's trial, which was factually nearly identical to Raleigh's case. The deaths of two witnesses and the 16 months between the time of the alleged crime and the motion to withdraw were unrelated to Raleigh's plea.

Yet, even if the prejudice to the State was overstated, we do not believe the district court abused its discretion in denying Raleigh's motion to withdraw his plea. The district court noted that even if there were no prejudice to the State, the court would still have denied Raleigh's motion because Raleigh failed to advance reasons why withdrawal was "fair and just." Given that Raleigh failed to advance substantiated reasons for withdrawal of his plea, we hold that the district court did not abuse its discretion in denying Raleigh's motion to withdraw his guilty plea under the "fair and just" standard of Minn. R.Crim. P. 15.05, subd. 2.

Accordingly, we affirm the district court's decision to deny Raleigh's motion to withdraw his guilty plea to first-degree premeditated murder under either the "manifest injustice" or the "fair and just" standard.

Affirmed.