*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2059**

Dion Dalvante Harris, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent

**Filed August 4, 2014
Affirmed
Ross, Judge**

Ramsey County District Court
File No. 62-CR-10-5143

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**ROSS**, Judge

Dion Harris entered his former girlfriend's apartment and assaulted her. He pleaded guilty to first-degree burglary. Two years after being sentenced, Harris petitioned

for postconviction relief on the grounds that his plea was invalid. The district court held Harris's postconviction petition untimely and lacking merit. The district court erred in its untimeliness holding, but we affirm its denial of Harris's postconviction petition because Harris has not established that his guilty plea was invalid.

## FACTS

Dion Harris went to his former girlfriend's apartment in the early morning hours of July 4, 2010, despite being prohibited from doing so by an order for protection. Harris physically assaulted her, grabbed the keys to her apartment, left, and then re-entered the apartment and assaulted her a second time. His girlfriend's sister called police. The victim, A.C.A., and both of her roommates told police that Harris punched A.C.A. in the face and threatened all of them with a knife. The state charged Harris with two counts of first-degree burglary and one count of terroristic threats.

Harris agreed to plead guilty to one count of first-degree burglary if the state would drop the other charges. At his plea hearing, Harris waived his right to a jury trial. The prosecutor asked Harris a number of leading questions to establish the factual basis of the plea. Harris acknowledged that he "shoved [his] way" into the apartment, that "officers actually found a knife outside the back door where [he] had tried to get in," that he "didn't have any lawful right to be in [A.C.A.'s] apartment," that he "grabbed the keys to the apartment . . . to re-enter the apartment," and that he re-entered the apartment and "punched [A.C.A.] repeatedly." The district court asked Harris if that was what happened, and Harris replied, "Yeah."

2

Harris changed the story somewhat when the district court asked if he disagreed with any of the facts just laid out. Harris asserted that although he "did not have permission to be there because the no-contact order was in effect, [A.C.A.] gave [him] permission to come there . . . to be there with [his] kids." He then said that "[A.C.A.] opened the door and let [him] in." Once inside, Harris "lost control of everything . . . [and] punched [A.C.A.] in the head repeatedly." Harris admitted that he told police he grabbed A.C.A.'s keys, and he admitted that he re-entered the apartment and punched A.C.A.

The district court accepted Harris's guilty plea. It sentenced him on June 23, 2011. Harris petitioned for postconviction relief on June 24, 2013, alleging that the factual basis for his plea was insufficient. The district court denied relief. It held that the petition was time-barred because it was filed more than two years after sentencing. It also found that Harris's petition failed on the merits because "[t]he 'no-entry' provision of an [order for protection] satisfies the illegal entry element of burglary."

Harris appeals.

### D E C I S I O N

Harris maintains that the district court erred by finding that his postconviction-relief petition was time-barred and that a sufficient factual basis supported his guilty plea. His argument is persuasive on the first issue, but not the second.

We think Harris accurately maintains that he filed his petition for postconviction relief before the statutory deadline. The issue is a legal question, which we review de novo. *Bee Yang v. State*, 805 N.W.2d 921, 925 (Minn. App. 2011), *review denied* (Minn.

3

Aug. 7, 2012). A defendant generally must file a petition for postconviction relief within two years of sentencing. Minn. Stat. § 590.01, subd. 4(a) (2012). The two-year period does not include the date of sentencing, and it does not include the last day if it lands on "a Saturday, a Sunday, or a legal holiday." Minn. R. Crim. P. 34.01. If the last day is a weekend or holiday, "the period runs until the end of the next day that is not a [weekend] or a legal holiday." *Id.* The district court sentenced Harris on June 23, 2011. Harris's two-year period therefore began the next day and ran until June 23, 2013. *See* Minn. Stat. § 590.01, subd. 4. But June 23, 2013, was a Sunday. Harris therefore had until the end of the following day, Monday, June 24, 2013, to file for postconviction relief. Because Harris filed his petition on that Monday, the district court erred by holding that he missed the deadline.

But the district court did not err when it decided the merits of Harris's petition. We are not persuaded by Harris's argument that the district court erroneously found his plea to be valid. To withdraw a guilty plea after sentencing, a defendant must show the withdrawal is necessary to correct a manifest injustice. *State v. Raleigh*, 778 N.W.2d 90, 93–94 (Minn. 2010) (citing Minn. R. Crim. P. 15.05, subd. 1). A guilty plea is invalid and manifestly unjust if it is not accurate, voluntary, and intelligent. *Id.* at 94. We review the validity of a guilty plea de novo. *Id.*

Harris challenges only the accuracy element of his plea. He bears the burden to show that his plea was inaccurate. *See id.* The accuracy requirement protects defendants from pleading guilty to crimes that are more serious than the crimes they could be convicted of at trial. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012). If the record

4

contains evidence that "would support a jury verdict that [Harris] is guilty of at least" first-degree burglary, this requirement is met. *See id.* at 589 (quotation omitted). We are satisfied that the record contains evidence that would support a guilty verdict on the first-degree burglary charge.

A defendant commits first-degree burglary if he "enters a building without consent and . . . assaults a person" inside. Minn. Stat. § 609.582, subd. 1 (2008). A person has consent to enter a property if the person in lawful possession gives it. *See* Minn. Stat. § 609.581, subd. 4(a) (2008). Harris undisputedly assaulted someone in the apartment. He maintains that A.C.A., the person who possessed the apartment, consented to his entry, undermining the factual basis for his guilty plea. The state counters that the nonconsensual-entry element was satisfied as a matter of law when Harris admitted that he entered the property in violation of the order for protection. We need not address the state's legal argument, however, because Harris acknowledged that he "shoved [his] way past" people to gain entry and then stole keys to re-enter. When explaining in his own words what had happened, Harris claimed that he initially had permission to enter the apartment, but he also stated that he re-entered the apartment with the pilfered keys and that he committed an assault after re-entering. The factual rendition in the record is somewhat confusing, especially because Harris's answers were at times equivocal. But Harris must show that his plea was inaccurate, and he has failed to meet that burden. This is because even if a jury believed that Harris initially had permission to enter the

apartment, Harris admitted to and described both his re-entry into the apartment and the following assault. This satisfies all elements of first-degree burglary.

**Affirmed.**