*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0470**

State of Minnesota,
Respondent,

vs.

Gonsalo Cosme-Garsia,
Appellant.

**Filed February 29, 2016
Affirmed
Connolly, Judge**

Dakota County District Court
File No. 19HA-CR-13-3341

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Heather D. Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Connolly, Judge; and Klaphake, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

In this postconviction appeal, appellant challenges the district court's denial of his motion to withdraw his guilty plea, claiming the guilty plea was not intelligently made because appellant was denied effective assistance of counsel. Because appellant was aware of the consequences of his guilty plea, we conclude that the district court did not err in refusing to allow appellant to withdraw his plea under the manifest-injustice standard.

## FACTS

On October 10 and 11, 2013 appellant was arrested and charged with one count of first-degree sale of a controlled substance and a second count of first-degree possession of a controlled substance. The charges were based on the state's allegation that appellant and three other men possessed 3.93 pounds of methamphetamine with the intent to sell the drugs to a person who was an undercover police officer. Due to a joinder dispute resulting from the state attempting to try all four individuals together, and several difficulties with appellant obtaining counsel, appellant and the state did not enter into a plea agreement for more than a year. The agreement called for appellant to plead guilty to count one and for the state to dismiss count two. The guidelines sentence for count one based on an offense severity level of nine and appellant's criminal-history score of three is 122 months in prison, with a range of 104-146 months and a mandatory minimum sentence of 48 months.

At the plea hearing, the following discussion[1] occurred regarding appellant's understanding of the agreement prior to appellant being sworn in:

> THE COURT: Okay. Then – and I want to be clear on this. There's been no promise made to you as to the type of sentence you'll receive, correct?
> [APPELLANT]: How—what do you mean "promises[?]"
> THE COURT: Well, promises either through your attorney or by anyone else as to what's going to happen today.
> [APPELLANT]: Not right now.
> COUNSEL: If I could, Mr. Cosme-Garsia, we are hopeful of receiving 48 months of executed sentence. You understand that?
> [APPELLANT]: Okay. Okay. Okay. That's guideline.
> COUNSEL: But there's no promise from the judge. We are going to argue for that. We're going to ask him to execute.
> [APPELLANT]: Okay.
> THE COURT: Now, the next step in terms of that line of questioning, the guidelines that are put in place for this case would put the range of sentence from 104 months to 146 months in most cases. That's where your sentence will be around. You understand that?
> [APPELLANT]: Yes.
> THE COURT: And the least amount I could sentence you to, under my envision of the law, is 48 months.
> [APPELLANT]: Okay.
> THE COURT: But a more likely result is somewhere between 104 and 146.
> INTERPRETER: And?
> THE COURT: And 146 months. I want you – knowing that, do you want to go forward today?
> [APPELLANT]: Yes, that's fine.
> . . . .
> THE COURT: And the sentencing is going to be somewhere between 48 months and 169 [sic] months.[2]
> [APPELLANT]: Okay.
> THE COURT: You are fully aware of that?
> [APPELLANT]: Yes. Yes.

---

[1] Appellant does not speak English; a Spanish language interpreter translated for appellant at the hearing.

[2] The district court judge mistakenly told appellant that under the sentencing guidelines appellant could be imprisoned for up to 169 months. The sentencing guidelines dictate a sentencing range between 104-146 and a mandatory minimum of 48 months in prison for appellant, unless the court found that an upward durational departure was appropriate.

Following this exchange, the court accepted appellant's guilty plea and adjudicated him guilty of count one and dismissed count two.

After the court accepted the plea, the attorneys for each side made arguments concerning sentencing. The state argued: (1) the pre-plea presentence investigation (PSI) found no mitigating factors and recommended a middle of the box guideline sentence, which, with a criminal-history score of three, is 122 months; (2) the sentencing guidelines establish the range of 104 to 146 and the mandatory minimum is 48 months; and (3) in order to depart downward to the 48-month mandatory minimum sentence, the court had to find substantial and compelling reasons to depart from the guidelines and there were no such reasons. The state requested a middle of the box guidelines sentence as recommended by probation which would be 122 months in prison.

Appellant argued that he should receive a downward durational departure to the mandatory minimum of 48 months because he is a "desperate father" trying to provide for his family in west Texas. Appellant called the two previous convictions "youthful indiscretions" but admitted that the two convictions bound the district court to the mandatory minimum of 48 months. Minn. Stat. § 152.021, subd 3(b) (2014). Between 2007 and 2013, appellant argued that he had been a law abiding citizen (no speeding tickets, parking tickets, drunk driving offenses, narcotics offenses, or other violations of the law). According to appellant, he was "simply working to keep his family healthy and whole." Appellant argued that his only mistake is that he permitted the two men, who brought him to Minnesota for legitimate purposes (roofing work), to use him to transport a "large

4

amount of drugs." Finally, appellant argued that, like one of his counterparts (who had no previous offenses), he should receive a probationary sentence.

The district court disagreed and sentenced appellant to 104 months in prison. Immediately after the judge pronounced the sentence, appellant's counsel attempted to withdraw the guilty plea stating:

> Your Honor, if I might, on behalf of my client – I know he is stunned. I was under the impression that the circumstances warranted a departure to 48 months. I believe, Your Honor, I have [misled] my client. I don't think he believed it was a possibility he would be sentenced in the guideline range. We would ask for an opportunity – I know it's unusual – to withdraw his plea at this time. We did not think that this Court had factors in front of it that would likely result in that sentence. And we simply would not have machinated to the extent that we did to keep it with a judge who had such an opportunity to read the file. I'm not claiming Your Honor has misled me, but I have [misled] my client. He simply did not think it was an option.

After a brief recess during which the judge "gave some thought to [appellant's] request" the judge found that a "very clear effort to advise [appellant] of the possibility of sentencing" was made. In denying the plea, the judge specifically pointed out that he indicated that the likelihood of sentencing occurring was within the 104 to 146 month range, he asked if that would alter or change appellant's mind as to pleading guilty, and appellant indicated that it would not and that he understood the likelihood of sentence.

This appeal follows.

# DECISION

**1.  Can appellant withdraw his guilty plea under the manifest-injustice standard?**

"A defendant has no absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010).  There are two relevant standards for guilty-plea withdrawal:  (1) manifest-injustice and (2) fair-and-just.  The standard for reviewing denial of a guilty-plea-withdrawal motion under the manifest-injustice standard, which is applied to postsentencing motions, requires withdrawal when the defendant shows that the guilty plea was invalid, i.e., not accurate, voluntary, and intelligent, is a "question of law that we review de novo." *Id.* at 94; *see* Minn. R. Crim. P. 15.05, subd. 1.  Because appellant moved to withdraw his guilty plea after he had been sentenced, the manifest-injustice standard applies.

Appellant argues that his guilty plea was not made intelligently.  "The intelligence requirement ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea.  'Consequences' refers to a plea's direct consequences, namely the maximum sentence and fine." *Id.* at 96.  The court clearly explained the sentence it would impose could be anywhere between 48 and 146 months, and most likely between 104 and 146 months.  The district court judge was very clear about the likely sentence.  At previous hearings dating back to as early as December 18, 2013, the district court judge indicated the likely sentence for appellant was a minimum of 104 months.  Twice, appellant was informed that, if he were to go to trial, the state would be making a motion to seek aggravating factors resulting in a possible sentence of 244 months.

6

Appellant was told that the sentencing range is 104-146 months in prison at two separate hearings and at least four different times.

Furthermore, the language appellant's attorney used at the hearings does not indicate that he directly told appellant there was not any possibility that the court would sentence appellant to more than 48 months. On the record, appellant's attorney stated: "we are hopeful of receiving 48 months of executed sentence . . . but there's no promise from the judge" and "I was under the impression that the circumstances warranted a departure to 48 months" and "I don't think he believed it was a possibility he would be sentenced in the guideline range." None of these comments indicate that the attorney told appellant that "there is absolutely no chance that you will receive 104 months" or the like.

Because appellant cannot point to anything in the record to refute that he was at least aware of the maximum sentence he could receive, he cannot claim that his plea was made unintelligently. We therefore conclude that because appellant's plea was made intelligently, the district court did not err in refusing to allow appellant to withdraw his plea under the manifest-injustice standard.

## 2.    Did appellant have ineffective assistance of counsel?

"A defendant's guilty plea may be constitutionally invalid if the defendant received ineffective assistance of counsel." *Sames v. State*, 805 N.W.2d 565, 567 (Minn. App. 2011). Although appellant agreed he understood the sentencing range, and the range to which the court would likely sentence him, appellant still argues that because his attorney failed to provide him with effective assistance of counsel required by the federal and state constitutions his plea was not made intelligently. *See* U.S. Const. amend. VI; Minn. Const.

art. I § 6; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Appellant argues that his attorney misled him as to the sentence he would receive.

To prevail on a claim of ineffective assistance of counsel, appellant must demonstrate (1) that the counsel's representation fell below an objective standard of reasonableness and (2) that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687 (citations omitted). Appellant "has the burden of proof and there is a strong presumption that counsel's performance fell within a wide range of reasonable assistance." *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007). A court may address the two prongs of the *Strickland* test in any order and "may dispose of the claim on one prong without analyzing the other." *Schleicher v. State*, 718 N.W.2d 440, 447 (Minn. 2006).

Generally, an ineffective-assistance-of-counsel claim is raised in a petition for postconviction relief rather than on direct appeal because a postconviction hearing provides the court with "additional facts to explain the attorney's decisions." *Black v. State*, 560 N.W.2d 83, 85 n.1 (Minn. 1997). In this case, the court lacks sufficient information to determine if appellant received effective assistance of counsel. We conclude that this issue should be preserved for review at a future postconviction hearing, should appellant wish to pursue that course of action.

Appellant's attorney stated:

> "I have [misled] my client. I don't think he believed it was a possibility he would be sentenced in the guideline range . . . . I'm not claiming your Honor has misled me, but I have [misled] my client. He simply did not think it was an option.
>  . . . .

8

He understood you would have to acknowledge [the guidelines] either way, but we did think that there was a significant possibility that [the] court would consider it.

Without further testimony from the attorney and appellant regarding what was actually said by the attorney to his client off the record, this court cannot determine if effective assistance of counsel was given. If appellant (as he alleges in his appeal) was told by his counsel that the prosecutor and court had agreed to a 48-month sentence and he should "simply answer 'Yes' to every question [he] was asked" then there may be support for the ineffective-assistance-of-counsel claim. What the attorney actually told appellant will likely dictate whether appellant's counsel "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Therefore, in affirming the district court's finding that appellant made his plea intelligently, we nevertheless permit appellant to preserve the issue of ineffective assistance of counsel should appellant choose to pursue such a claim in a postconviction proceeding.

**Affirmed.**