*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1261**

Jeremy Shane Zimmerman, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed February 6, 2017
Reversed and remanded
Stauber, Judge**

Scott County District Court
File No. 70-CR-15-23903

Cathryn Middlebrook, Chief Appellate Public Defender, F. Richard Gallo, Jr., Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney,
Shakopee, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Worke, Judge; and Stauber,

Judge.

**STAUBER**, Judge

Appellant argues that the district court erred by refusing to permit him to withdraw his guilty plea to failure to register as a predatory offender for reasons of manifest injustice. We reverse and remand for further proceedings consistent with this opinion.

**FACTS**

Appellant Jeremy Shane Zimmerman was charged with two counts of violating predatory-offender-registration requirements between October 20, 2015, and December 17, 2015. Zimmerman, who was required to register as a predatory offender, informed the St. Paul Police Department (SPPD) that he was homeless and was living in a car in the Walmart parking lot in St. Paul. As required for offenders who lack a permanent address, he checked in weekly with the SPPD and on each occasion informed Officer Lynette Cherry of the SPPD that he was living in the Walmart parking lot and had no secondary address.

Officer Cherry informed Detective Jim Blatzheim of the Shakopee Police Department that she believed that Zimmerman might be staying at an unregistered address in Shakopee. Detective Blatzheim spoke with T.A.B., who stated that Zimmerman had been staying at her home in Shakopee a couple of times a week since his release from prison in October 2015, and was receiving mail at her address. T.A.B. provided Blatzheim with pieces of mail Zimmerman received at her address.

Blatzheim also spoke with S.J.S., who is Zimmerman's mother. S.J.S. reported that Zimmerman had stayed overnight at her Shakopee residence and slept overnight

2

there once or twice a week. When Blatzheim spoke with Zimmerman, he responded that he had only visited T.A.B. and S.J.S around Thanksgiving, but otherwise was living in his car at Walmart. Zimmerman was arrested and charged with two predatory-offender-registration violations.

After jury selection but before trial, Zimmerman agreed to plead guilty. Zimmerman had "second thoughts" about pleading guilty, but after consulting with his attorney, he entered a guilty plea to knowingly violating the predatory-offender-registration requirement or intentionally providing false information. The district court sentenced him to the presumptive sentence of 39 months, and imposed a ten-year conditional-release term.

Soon after sentencing, Zimmerman wrote to the district court and asked to withdraw his guilty plea. Subsequently, his counsel submitted a formal motion to withdraw based on ineffective assistance of counsel, misrepresentation by counsel, and untimely disclosure. On June 6, 2016, the district court issued an order denying Zimmerman's motion to withdraw his guilty plea. This appeal followed.

## D E C I S I O N

"A defendant has no absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). But a court must permit a defendant to withdraw a guilty plea at any stage of the proceedings, including after sentencing, if it is necessary to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *Raleigh*, 778 N.W.2d at 94. A

guilty plea is valid if it is accurate, voluntary, and intelligent. *Id.* "[T]he validity of a plea presents a question of law that [an appellate court] review[s] de novo." *Id.*

Zimmerman challenges the accuracy of his guilty plea. An accurate plea ensures that the defendant is not pleading guilty to a more serious offense than he could be convicted of at trial. *Id.* A plea is accurate if there is an adequate record providing a factual basis for the plea. *Id.* "The factual basis must establish sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Munger v. State*, 749 N.W.2d 335, 338 (Minn. 2008) (quotation omitted). Zimmerman argues that the facts elicited are not sufficient to establish an accurate plea.

Zimmerman pleaded guilty to knowingly violating the registration requirement or providing false information to the appropriate law enforcement authority in violation of Minn. Stat. § 243.166, subd. 5(a) (2014). The district court read the elements of the crime to Zimmerman before he entered his plea: (1) Zimmerman was required to register; (2) Zimmerman knowingly or intentionally violated a registration requirement, including failing to report to the local law enforcement authority within 24 hours after entering a jurisdiction; (3) Zimmerman's registration requirement had not lapsed; and (4) Zimmerman acted between October 20, and December 17, 2015, in Scott County. The district court questioned Zimmerman to establish a factual basis for the plea. Zimmerman acknowledged that he was required to register and that he registered as homeless. Zimmerman stated, "However, out of – what violated this crime is I didn't

4

register for consecutive – or more than 24 hours while in Scott County." The following exchange to provide a factual basis for the plea then took place:

> THE COURT: Okay. So you came to Scott County, and you stayed at a residence in Scott County; is that correct?
>
> THE DEFENDANT: Correct.
>
> THE COURT: Okay. And do you remember what – what city it was in Scott County that you stayed in?
>
> THE DEFENDANT: Shakopee, Minnesota
>
> THE COURT: Okay. And when you stayed there, did you go to the Shakopee Sheriff's Department or police department within 24 hours after entering this jurisdiction?
>
> THE DEFENDANT: No.
>
> THE COURT: And you agree that at the time this happened that you were still required to register?
>
> THE DEFENDANT: Yes.

The factual basis elicited by the district court does not demonstrate that Zimmerman intentionally or knowingly violated the registration requirements, an essential element of the offense.

> "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result. In addition, . . . the actor must have knowledge of those facts which are necessary to make the actor's conduct criminal and which are set forth after the word "intentionally."

Minn. Stat. § 609.02, subd. 9(3) (2014). To "'[k]now' requires only that the actor believes that the specified fact exists." Minn. Stat. § 609.02, subd. 9(2) (2014). The above colloquy does not establish that Zimmerman knowingly or intentionally violated

5

the registration statute. Because the factual basis does not establish the requisite mens rea, it is inadequate to support the accuracy of Zimmerman's guilty plea.

The state argues that it is clear from the record that Zimmerman established a secondary address at T.A.B.'s house, but the plea does not refer to a secondary address. The elements as read by the district court relate only to the charge of failing to register within 24 hours after entering another jurisdiction when a predatory offender has no primary address. The plea colloquy also does not establish that Zimmerman remained in Shakopee for more than 24 hours. The district court erred by refusing to permit him to withdraw his plea.[1]

**Reversed and remanded.**

---

[1] Zimmerman also challenged the district court's imposition of a ten-year conditional-release term as unauthorized, when the facts supporting the enhanced conditional-release term were not found by a sentencing jury and he did not waive his right to a sentencing jury. *See State v. Her*, 862 N.W.2d 692, 696 (Minn. 2015) (stating that a risk-level III assignment is a fact that can increase a conditional-release term beyond the statutory maximum, and, thus, a sentencing jury must find that a defendant is assigned to that risk level). In light of our decision, we decline to address this issue.