*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0639**

State of Minnesota,
Respondent,

vs.

Cinque Daprice Owens,
Appellant.

**Filed January 12, 2026
Affirmed
Harris, Judge**

Hennepin County District Court
File No. 27-CR-20-27730

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Robert I. Yount, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Slieter, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

Appellant challenges the district court's denial of his petition to vacate his convictions for aiding and abetting attempted first-degree felony murder under a 2023 law that created a process to challenge certain felony murder convictions based on an aiding-

and-abetting theory of criminal liability. 2023 Minn. Laws ch. 52, art. 4, § 24, at 864-68, *amended by* 2024 Minn. Laws ch. 123, art. 4, §§ 19-21, at 2268-71 (the Act). He argues the district court erred by determining that there was not a reasonable probability that he was entitled to relief and denying his petition without a hearing. We affirm.

## FACTS

In 2020, respondent State of Minnesota charged appellant Cinque Daprice Owens with two counts of aiding and abetting attempted first-degree felony murder, in violation of Minnesota Statutes section 609.185(a)(3) (2020). The complaint alleged that Owens, coordinating with other gang members, planned to go to an opposing gang member's home and "initiate a hit on this individual." Owens was driving one of the two vehicles that waited at the home. When the victims got into a vehicle and drove away, Owens followed. Owens eventually pulled his vehicle to the right of the victims' vehicle and the two vehicles exchanged gunfire. Owens leaned forward while the front-seat passenger shot towards the victims' vehicle. The two people in the back seat of Owens's car also fired at the victims' vehicle. The victims' vehicle swerved and the individuals in the second vehicle fired at the victims' vehicle. Owens and his associates in the second vehicle sped away to an unknown location. Following the shooting, law enforcement found the victims in their vehicle on the side of the road. The driver and the front-seat passenger had multiple bullet wounds.

Owens pleaded guilty to both counts as charged. During his plea hearing, Owens agreed that he conspired with his associates, members of a particular street gang, and decided to ambush some members of an opposition gang. He also admitted to driving one

2

of the vehicles that followed the victims' vehicle and pulling up alongside the victims' vehicle, and that the occupants of his vehicle fired "dozens and dozens" of shots at the opposition vehicle. And Owens agreed that "the intention and expectation of this operation was literally to kill those opposition gang members."

The district court accepted Owens's plea. Under the plea agreement, the district court imposed concurrent 230-month prison sentences. The sentence was a downward durational departure. According to the departure report, the district court granted the departure because Owens, as the driver and not a shooter, had less involvement than his co-defendants. Owens did not pursue a direct appeal.

In July 2024, Owens filed a preliminary application to vacate his convictions under the Act, which allows individuals convicted of certain kinds of first-degree murder or second-degree unintentional felony murder "under the theory of liability for crimes of another," to apply to have their convictions vacated. 2023 Minn. Laws ch. 52, art. 4, § 24 at 864-868. The district court granted Owens's preliminary application, concluding there was a reasonable probability that Owens was entitled to relief under the Act. *Id*., § 24, at 865-66 (discussing district court's review of a preliminary application). After his preliminary application was approved, Owens filed a petition to vacate his convictions. *Id.*, § 24, at 866-67 (outlining requirements for petition). As permitted by the Act, Owens submitted additional information with his petition, including the complaint and the plea- and sentencing-hearing transcripts. *Id.*, § 24, at 866. The state opposed Owens's petition and included the police report from the incident as supporting documentation. *Id.*, § 24, at 867 (outlining requirements for state's responsive motions).

After considering the additional information in Owens's petition and the state's response, the district court denied Owens's petition without a hearing. *See Id.*, § 24, at 867 (allowing district court to deny petition without a hearing when additional information establishes that there is not a reasonable possibility applicant is entitled to relief). The district court explained that based on Owens's testimony at the plea hearing, he could not "show by a preponderance of the evidence that he did not intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being."

Owens appeals.

## DECISION

Owens challenges the district court's denial of his petition to vacate his convictions for aiding and abetting attempted first-degree felony murder under the Act. *Id.*, § 24, at 864-68.

In 2023, the Minnesota legislature amended the aiding-and-abetting-statute "to narrow the scope of liability for aiding and abetting first- and second-degree felony murder." *Raisch v. State*, 8 N.W.3d 237, 239 (Minn. App. 2024); *see* 2023 Minn. Laws ch. 52, art. 4, § 3, at 850 (codified at Minn. Stat. § 609.05, subd. 2a (Supp. 2023)). In addition to amending the aiding-and-abetting statute, the legislation, provides corresponding retroactive relief for those who were previously convicted of aiding and abetting first-and-second degree felony murder and are still in custody or under court supervision. 2023 Minn. Laws ch. 52, art. 4, § 24, at 865; *State v. Griffin*, 24 N.W.3d 247, 251 (Minn. 2025). To qualify for relief from a first-degree felony murder conviction under

4

section 609.185(a)(3), the petitioner must demonstrate "by a preponderance of the evidence that the petitioner: (1) did not cause the death of a human being; and (2) did not intentionally aid, advise, hire, counsel, or conspire with or otherwise procure with the intent to cause the death of a human being." 2023 Minn. Laws ch. 52, art. 4, § 24, at 867.

To seek such relief, the petitioner first submits a preliminary application. *Id*., at 865 (outlining requirements for preliminary application). If the district court determines from the preliminary application that "there is a reasonable probability that the applicant is entitled to relief," it must grant the preliminary application and send notice to the parties. *Id.*, § 24, at 865-66. Then, the petitioner files and serves a petition to vacate the judgment. *Id.*, § 24, at 866. The petition includes the information from the preliminary application and "may contain any other relevant information, including police reports, trial transcripts, and plea transcripts." *Id.*, § 24, at 866. The state must file a response either supporting the petition, or "explaining why the petitioner is not entitled to relief along with any supporting documents." *Id.*, § 24, at 867. The district court may either grant the petition and schedule the matter for resentencing or deny the petition and explain in a memorandum why the court concludes that there is not a reasonable probability that the petitioner is entitled to relief, or schedule the matter for an evidentiary hearing. *Id.*, § 24, at 867.

Here, the district court granted Owens's preliminary application, but denied his petition without an evidentiary hearing, concluding that Owens "cannot show by a preponderance of the evidence that he did not intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human

5

being."[1]  The district court relied entirely on Owens's testimony at the plea hearing, and found that Owens could not "split his intention from the intentions of others involved in the crime," because "Owens explicitly testified that he conspired with other gang members to ambush rival gang members [and] 'the intention and expectation of this operation was literally to kill those opposition gang members.'"

The supreme court recently concluded that Minnesota appellate courts review appeals under the Act similarly to petitions for postconviction relief under Minnesota Statutes chapter 590 (2024). *Griffin*, 24 N.W.3d at 254. Accordingly, we review the district court's order denying Owens's petition to vacate his conviction for an abuse of discretion.[2] *Id.*; *see also Williams v. State*, 5 N.W.3d 399, 405 (Minn. 2024) (reviewing summary denial of postconviction petition for an abuse of discretion). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Griffin*, 24 N.W.3d at 255 (quoting *Riley v. State*, 792

---

[1] Owens does not argue that the district court erred by applying the preponderance-of-the-evidence standard instead of the reasonable-probability standard but construes the district court's order as finding there is no reasonable probability Owens is entitled to relief. Issues not briefed on appeal are forfeited. *State v. Janecek*, 903 N.W.2d 426, 428 n.3 (Minn. App. 2017).

[2] Owens argues that this court should engage in de novo review because his challenge to the district court's order involves a proper interpretation of the Act. But Owens does not seem to present a statutory interpretation argument, other than suggesting that "the district court should have considered that the offense as charged created a specific intent crime." Instead, Owens challenges the district court's findings related to his intent and its conclusion that he did not have a reasonable probability of relief. We, therefore, follow *Griffin* and review the district court's decision for an abuse of discretion. 24 N.W.3d at 254.

N.W.2d 831, 833 (Minn. 2011)). We review the district court's factual findings for clear error and its legal conclusions de novo. *Id.*

A person is guilty of first-degree felony murder when they "cause[] the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit . . . a drive-by shooting." Minn. Stat. § 609.185(a)(3) (2024). There is no dispute that the passengers in Owens's vehicle attempted to cause the death of the opposition gang members, and that Owens was not a shooter. But Owens may still be held liable for the acts of the passengers under the aiding-and-abetting statute. *See* Minn. Stat. § 609.05 (2020) (outlining liability for crimes of another pre-2023 amendment).[3] "Aiding and abetting is not a separate substantive offense," but is "a theory of criminal liability." *State v. Segura*, 2 N.W.3d 142, 156 (Minn. 2024) (citation and quotation omitted). "In other words, section 609.05 makes accomplices criminally liable as principals." *State v. Ezeka*, 946 N.W.2d 393, 407 (Minn. 2020).

At the time of his plea, for Owens to be guilty as an accomplice he had to admit that he "knew that his alleged accomplices were going to commit a crime and that [he] intended his presence or actions to further the commission of the crime." *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn. 2007); *see Segura*, 2 N.W.3d at 158 (discussing evidence required to support conviction of aiding and abetting attempted premeditated murder). Owens admitted to these elements when he pleaded guilty. He admitted that he was "working together with, or conspiring with, some other associates" and they "decided to ambush

---

[3] The parties agree that Owens pleaded guilty under an aiding-and-abetting theory of liability.

7

some members of an opposition gang." Owens also agreed that he drove the vehicle and that "the intention and expectation of this operation was literally to kill those opposition gang members."

As outlined above, under the Act, Owens may no longer be held liable for aiding and abetting first-degree felony murder "unless [he] intentionally aided, advised, hired, counseled, or conspired with or otherwise procured the other *with the intent to cause the death of a human being*." 2023 Minn. Laws ch. 52, art. 4, § 3, at 850 (emphasis added). Thus, we must decide whether the district court erred when it determined that Owens's guilty plea established that he had the intent to cause the death of a human being.

Owens argues that the district court erred in concluding there was not a reasonable probability of relief under the Act because it "should have considered that the offense as charged created a specific intent crime," and "Owens acknowledged the intent of the operation, but not his specific intent." The state argues that the district court did not abuse its discretion when it denied Owens's petition "because the factual basis for Owens's plea shows he acted 'with the intent to cause the death of a human.'" We agree with the state and conclude that the district court properly denied Owens's petition without a hearing because, based on the record before it, the district court acted within its discretion when it determined that Owens "cannot show by a preponderance of the evidence that he did not intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being."

"The requisite state of mind for accomplice liability can be inferred from circumstantial evidence, including the defendant's presence at the scene of the crime, a

8

close association with the principal before and after the crime, a lack of objection or surprise under the circumstances, and defendant's flight from the scene of the crime with the principal." *Segura*, 2 N.W. 3d at 156 (quotation omitted). A person acts with the intent to kill if he "either has a purpose to . . . or cause the result" of the death of a human being "or believes that the act, if successful will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2024). Intent is a state of mind generally proved by circumstantial evidence. *State v. Irby*, 967 N.W.2d 389, 396 (Minn. 2021). "Intent can be inferred from the idea that a person intends the natural consequences of his or her actions." *Nelson v. State*, 880 N.W.2d 852, 860 (Minn. 2016) (quotation omitted). And "[i]ntent to cause death can be inferred from the nature and extent of the victim's wounds and the defendant's failure to aid the victim after an assault." *Id.* (quotation omitted).

Although Owens was responding to leading questions from his attorney, his testimony at the plea hearing demonstrates that he shared the intent to kill the opposition gang members. *See State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) ("The [district] court should be particularly wary of situations in which the factual basis is established by asking a defendant only leading questions."). Owens testified that he was a member of a gang and that there was an "ongoing dispute" between the gangs. Not only did Owens admit that "the intention and expectation of this operation was literally to kill those opposition gang members," but he also admitted that he was familiar with the victims and was participating "in connection with coordinated gang activity." Owens decided, along with his associates, to ambush the opposition gang; he drove the vehicle, intentionally followed the victims' vehicle from their home into the community, and intentionally pulled

9

his vehicle alongside the victims' vehicle, putting the occupants in position to fire "dozens and dozens" of shots into the opposition vehicle.[4] Collectively, Owens's testimony and admissions support the district court's findings that Owens knew that his associates planned to kill the opposition gang members; he intended to aid in the murder by driving the vehicle and following and pulling up alongside the victims' vehicle; and he did those things with the intent to cause the death of the opposition gang members. Accordingly, the district court acted within its discretion when it denied Owens's petition to vacate his convictions under the Act.

Alternatively, Owens argues that if questions remain about his intent, this court should remand the matter for a hearing where he can demonstrate that he is entitled to relief under the Act. In the postconviction context, the district court must hold an evidentiary hearing, "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2024); *see Griffin*, 24 N.W.3d at 254 (applying postconviction statutory framework to appeals under the Act). But a hearing is not necessary when there are no "material facts in dispute which have not been resolved in the proceedings resulting in conviction." *Riley v. State*, 819

---

[4] As the state argues, there are additional facts in the complaint, which Owens submitted with his petition, suggesting that Owens is not entitled to relief under the Act. The complaint alleges that Owens's co-defendant clarified that they "intended to kill [the member of the opposition gang]" and he observed Owens "leaning all the way forward" while the front-seat passenger was shooting at the victims' vehicle. The state contends that the record demonstrates that Owens "was not merely present in a passive manner, but he was actively driving the getaway vehicle and moving his body to give his co-defendants a better shot at the [victims' vehicle]." Although not relied on by the district court, these additional facts support the district court's conclusion that Owens intended to cause the death of the opposition gang members.

N.W.2d 162, 167-68 (Minn. 2012); *see also Grant v. State*, No. A24-1908, 2025 WL 2435646, at *4 (Minn. App. Aug. 25, 2025) (concluding district court may summarily deny petition for relief under the Act when additional submissions show there is not a reasonable probability of relief), *rev. granted* (Minn. Dec. 17, 2025).[5]  An evidentiary hearing is also not required "unless facts are alleged which, if proved, would entitle a petitioner to the requested relief." *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn. 1990).  We review the district court's decision not to hold an evidentiary hearing for an abuse of discretion. *Caldwell v. State*, 853 N.W.2d 766, 770 (Minn. 2014).

Here, the district court relied solely on the undisputed plea transcript to determine that Owens was not entitled to relief.  As discussed above, the plea transcript shows that there is not a reasonable probability that justified relief for Owens, and Owens does not allege additional facts, which if proven, would warrant relief under the Act. *See Riley*, 819 N.W.2d at 167-68.  Accordingly, the district court acted within its discretion, when it denied Owens's petition without a hearing.

**Affirmed.**

---

[5] We cite this nonprecedential opinion as persuasive authority.  Minn. R. Civ. App. P. 136.01, subd. 1(c).