*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1001**

State of Minnesota,
Respondent,

vs.

Tylynne Lashawn Wilson,
Appellant.

**Filed April 11, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-14-8288

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellant Tylynne Lashawn Wilson challenges his conviction of aiding an offender, accomplice after the fact, arguing the district court erred in (1) denying his presentence

motion to withdraw his guilty plea; (2) denying his motion to withdraw his guilty plea on the grounds that it was not intelligently made; and (3) imposing a severity level assignment on an unranked offense. We affirm.

## FACTS

On March 22, 2014, Wilson was a passenger in a vehicle that exchanged gunfire with participants in another vehicle, resulting in gunshot injuries to two women. Police officers located the vehicle shortly after receiving reports of the exchange. Wilson knew the vehicle's driver was a felon in possession of a firearm and attempted to hide the driver's firearm so he would not get in trouble. Police officers found the firearm and it was later linked to discharged cartridges from the shooting. Wilson was charged by amended complaint with 11 counts, including possession of a firearm by an ineligible person, three counts of drive-by shooting, five counts of second-degree assault, one count of theft, and aiding an offender after the fact.

Pursuant to a negotiated plea agreement, Wilson entered a plea of guilty to felony aiding an offender, accomplice after the fact, in violation of Minn. Stat. § 609.495, subd. 3 (2014), and the remaining counts were dismissed. The prosecutor informed the district court at the plea hearing that the offense "is an unranked offense. Part of the agreement by the parties is that the Court will consider ranking the offense level at 8." The prosecutor continued:

> Assuming that that ranking is acceptable to the Court, then the statute provides that Mr. Wilson could be sentenced up to one half of the statutory maximum for the underlying offense. In this case we have agreed that the [principles] underlying the offense is a felon in possession of a firearm under Minnesota

2

Statute [§] 624.713. The statutory maximum for that felony crime of violence is 15 years which translates . . . to 180 months, and therefore the agreed upon sentence for Mr. Wilson will be one half of that which will be 90 months at the Commissioner of Corrections.[1]

Defense counsel stated that Wilson would "agree [at the sentencing hearing] that the Court can actually sentence him to the maximum sentence in this case. The maximum sentence that we've contemplated would be the 15 years that [the prosecutor] just mentioned." The district court judge questioned Wilson on each of the rights he was giving up and asked him if he understood his rights, and Wilson indicated that he did. Wilson pleaded guilty to the charge and provided the factual basis supporting his plea for aiding an offender, accomplice after the fact.

Wilson sought to withdraw his guilty plea before sentencing and argued that although there was "an agreed upon severity level eight," Wilson "did not have the benefit of full participation in that discussion." The state disputed that Wilson had inadequate

---

[1] The district court must impose the presumptive sentence for a felony crime under the Minnesota Sentencing Guidelines. Minn. Sent. Guidelines 2.D.1 (2014). Once the court determines the appropriate criminal-history score for a defendant, the presumptive sentencing range is determined by looking at the grid cell for the offender's criminal history score and the severity level of the offense. Minn. Sent. Guidelines 2.C.1. Appellant has a criminal history score of 9 and the severity level of the offense is 8. This yields a presumptive sentence of 111 months, with a permissible range of 92 months to 129 months. The legislature also mandated a minimum sentence of 60 months for this offense. Minn. Stat. § 609.11, subd. 5 (2014). When the presumptive sentence under the sentencing guidelines is longer than the statutory minimum sentence, district courts should impose whichever sentence is longer. Minn. Sent. Guidelines cmt. 2.E.03-04 ("[T]he presumptive duration is the mandatory minimum sentence prescribed for the conviction offense or the cell time [located in the sentencing grid], whichever is longer."). Because the presumptive range in the sentencing guidelines is higher than the statutory maximum sentence, the district court imposed a 90-month sentence. *Id*.

communication regarding the plea and introduced evidence that Wilson had numerous professional visits with his attorney while in custody. The district court stated that there were 15 court appearances and Wilson had "ample opportunity" to communicate with his attorney. The district court concluded that "the plea transcript indicates that the defendant clearly understood the charges and the consequences of pleading guilty" and denied Wilson's motion to withdraw his guilty plea.

At sentencing, the district court assigned Wilson a severity level 8 under the Minnesota Sentencing Guidelines and sentenced Wilson to 90 months in prison. The district court explained that the 90-month sentence is half of the statutory maximum for a felon in possession and that Wilson's criminal history score coupled with the circumstances of the offense justified the sentence. This appeal followed.

## D E C I S I O N

## I.

Wilson challenges the denial of his presentence motion to withdraw his guilty plea and claims that the district court abused its discretion by failing to consider whether it was fair and just to allow Wilson to withdraw his plea. A criminal defendant does not have an absolute right to withdraw a guilty plea once entered. *Perkins v. State*, 559 N.W.2d 678, 685 (Minn. 1997). The district court may allow a defendant to withdraw his guilty plea prior to sentencing if the defendant proves that it is "fair and just" to do so. *State v. Raleigh*, 778 N.W.2d 90, 97 (Minn. 2010); Minn. R. Crim. P. 15.05, subd. 2. The decision of whether to withdraw a presentence guilty plea is left to the sound discretion of the district

4

court and will be reversed only in the "rare case" in which the district court abused that discretion. *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989).

In analyzing a motion to withdraw a guilty plea under the fair-and-just standard, a district court considers: (1) the reasons the defendant advances to support withdrawal of the guilty plea; and (2) whether granting the motion prejudices the state. Minn. R. Crim. P. 15.05, subd. 2. Underlying this rule is the principle that "giving a defendant an absolute right to withdraw a plea before sentence would undermine the integrity of the plea-taking process." *Kim*, 434 N.W.2d at 266. The defendant bears the burden of advancing sufficient reasons to support plea withdrawal. *Raleigh*, 778 N.W.2d at 97. If that burden is met, the burden shifts to the state to show prejudice caused by withdrawal of a plea. *Id.*

With regard to the first factor, Wilson sought to withdraw his guilty plea on the grounds that he did not understand the terms of his plea and did not have time to discuss the plea with his attorney. The district court rejected this argument, finding that there "were a total of 15 court appearances up until the time of the plea, many of them substantive court appearances" as well as "ample opportunity" for Wilson to consult with counsel. The district court reviewed a 21-page transcript of the plea hearing where the plea negotiation was explained. Pursuant to the plea agreement, Wilson agreed to enter a plea of guilty to felony aiding an offender, accomplice after the fact in exchange for dismissal of the remaining counts. The parties also agreed that the district court would rank the offense level at 8, and that Wilson could be sentenced "up to one half of the statutory maximum for the underlying offense," or 90 months. Wilson indicated on the record that he wished to enter a plea of guilty and provided a factual basis to support his plea. Based upon the

record, the district court concluded that Wilson "clearly understood the charges and the consequences of pleading guilty" and denied Wilson's motion to withdraw his guilty plea. The district court considered the appropriate factors under the fair-and-just standard in reaching this decision. *See State v. Abdisalan*, 661 N.W.2d 691, 694 (Minn. App. 2003) (affirming district court's decision to deny plea-withdrawal under the fair-and-just standard where "[n]othing objectively in the record suggests that [defendant] failed to comprehend the nature, purpose, and consequences of his plea"). The evidence in the record establishes a valid factual basis for the district court's decision denying the withdrawal motion and we conclude that the district court did not err.

Because Wilson did not satisfy his burden of showing that it was fair and just to allow him to withdraw his plea, the district court did not consider whether the state would be prejudiced by the plea-withdrawal. "[A] district court may deny plea withdrawal under rule 15.05, subdivision 2, if the defendant fails to advance valid reasons why withdrawal is fair and just." *State v. Cubas*, 838 N.W.2d 220, 224 (Minn. App. 2013), *review denied* (Dec. 31, 2013). The district court acted within its discretion by declining to address the possible prejudice to the state where Wilson failed to advance valid reasons why plea-withdrawal would be fair and just.

## II.

Wilson argues that his guilty plea is invalid because he did not understand the direct consequences of his plea. A manifest injustice exists if a guilty plea is invalid. *Raleigh*, 778 N.W.2d at 94 (citing *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007)). "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Id.* The

defendant bears the burden of demonstrating that the plea was invalid. *Id*. The validity of a plea presents a question of law that we review de novo. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012).

Wilson argues his plea was not intelligent because he did not understand how the offense would be ranked and he did not understand how the maximum sentence would be calculated. Wilson does not contest that his plea was not accurate or involuntary. The intelligence requirement ensures that a defendant "understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). The state charged Wilson with felony aiding an offender, accomplice after the fact. The offense was unranked and the parties agreed to "rank[] the offense level at 8." The parties further agreed upon a 90-month prison sentence. Wilson agreed that he understood the charges against him and wanted to proceed with the plea. The district court questioned Wilson on each of the rights he was giving up and asked him if he understood. Wilson confirmed that he understood the rights he was giving up. Wilson acknowledged that no one forced him to make the decision to plead guilty, and he entered the plea freely and voluntarily. Wilson entered a plea of guilty to the offense and provided an adequate factual basis to support the charge. We determine the intelligence requirement is satisfied.

Wilson argues that he was confused by the maximum sentence imposed for the offense and did not have adequate time to discuss the issue with his attorney. The record does not support Wilson's argument. Wilson had 14 visits with his attorney and 15 court appearances up to the time of his plea. The district court determined this amounted to

7

"ample opportunity" for Wilson to communicate with his attorney, and we agree. The district court reviewed the 21-page transcript from the plea hearing and concluded that "the plea transcript indicates that the defendant clearly understood the charges and the consequences of pleading guilty." The district court also noted that "the issue of the unranked offense . . . was clearly covered in the transcript and the colloquy at the plea, in addition to which Mr. Wilson benefits from the negotiation given the 90 months he agreed to." Our de novo review of the record supports the district court's determination and we hold that Wilson is not entitled to withdraw his plea on the basis that it was not intelligently made.

### III.

Wilson contends that the district court erred by assigning a severity level 8 to the offense. The Minnesota Sentencing Guidelines were created to ensure "uniformity, proportionality, rationality, and predictability in sentencing." *State v. Misquadace*, 644 N.W.2d 65, 67 (Minn. 2002); *see also* Minn. Sent. Guidelines I.A (2014). A district court must impose the presumptive guidelines sentence unless "identifiable, substantial, and compelling circumstances" warrant departure. Minn. Sent. Guidelines II.D (2012). Aiding an offender as an after-the-fact accomplice is an unranked offense. Minn. Sent. Guidelines cmt. II.A.03 (2012). Assignment of a severity level for an unranked offense is within the district court's discretion and will only be disturbed upon an abuse of discretion. *State v. Kenard*, 606 N.W.2d 440, 442 (Minn. 2000); Minn. Sent. Guidelines cmt. II.A.05 (2012) (stating that when an offense is unranked, "judges should exercise their discretion by assigning . . . a severity level which they believe to be appropriate").

8

When assigning a severity level to an unranked offense, the district court considers

> the gravity of the specific conduct underlying the unranked offense; the severity level assigned to any ranked offense whose elements are similar to those of the unranked offense; the conduct of and severity level assigned to other offenders for the same unranked offense; and the severity level assigned to other offenders who engaged in similar conduct.

*Kenard*, 606 N.W.2d at 443. No single factor is controlling and the list is not exhaustive. *Id*. Here, the district court imposed a severity level of 8 and appropriately analyzed the *Kenard* factors in doing so.

In evaluating the first factor, the district court considered the evidence of the gravity of the underlying conduct, which demonstrated that Wilson was present in the car when the drive-by shooting occurred and made efforts to conceal a firearm and cover up the offense. The district court found that Wilson was present during the offense and participated in the crime.

With respect to the second factor, the district court considered the severity level assigned to the underlying drive-by shooting offense. The district court determined that "it's appropriate to rank it at the offense level of the crime . . . in which he participated and give him a sentence of half what the co-defendants, who had a more active role, would get. And that is the 90 months[.]" Wilson argues the district court erred by relying on the drive-by shooting as the underlying crime of violence. However, a court may consider the specific conduct of the defendant in its *Kenard* analysis. "Specific conduct" is "conduct underlying proof of the elements of the offense." *Kenard*, 606 N.W.2d at 443 n.3. While such conduct cannot justify an upward departure, it may be used to set the severity level

9

for unranked offenses. *Id.* (citation omitted). "Once the sentencing court has determined the severity level by considering the conduct underlying proof of the elements of the offense, it is not prohibited, in appropriate cases, from considering whether there are also aggravating or mitigating circumstances that would justify departure." *Id.* Wilson admitted to concealing a firearm used in a drive-by shooting that injured two women. The district court did not err by considering his conduct in its *Kenard* analysis.

With respect to the third factor, the district court determined that a severity level 8 was appropriate for "somebody with Mr. Wilson's criminal history." Wilson's conduct is similar to cases assigning a severity level 8 for accomplice after the fact crimes. *See, e.g.*, *Kenard*, 606 N.W.2d at 444-45 (discussing caselaw assigning severity level rankings of 8 to 10 for accomplice after the fact crimes); *State v. Skipintheday*, 704 N.W.2d 177 (Minn. App. 2005), *aff'd*, 717 N.W.2d 423 (Minn. 2006) (ruling district court did not abuse discretion by assigning severity level 8 to accomplice after the fact crime). And with respect to the final factor, the district court considered what sentence his codefendants, who had a more active role in the drive-by shooting, would face.

We conclude that the district court properly analyzed the *Kenard* factors and articulated its reasoning on the record when it assigned a severity level 8 to Wilson's offense. We therefore determine that the district court did not abuse its discretion in determining that the *Kenard* factors weighed in favor of a severity level 8 ranking.

**Affirmed.**

10